REVISED, July 22, 1998

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 97-31029

_____

GREGORY A. TOLSON,

                                        Plaintiff-Appellant,

                        versus

AVONDALE INDUSTRIES, INC.,
AVONDALE INDUSTRIES, INC.,
SHIPYARDS DIVISION, AVONDALE
HEALTH PLAN AND AVONDALE
INDUSTRIES, INC., SHIPYARDS
DIVISION, GROUP INSURANCE PLAN,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____

June 3, 1998

Before WIENER, BARKSDALE and DEMOSS, Circuit Judges.

WIENER, Circuit Judge.

        In appealing from the district court's summary judgment that

dismissed his claims for medical and long-term disability benefits

under two ERISA[1] plans sponsored by his employer, Plaintiff-Appellant Gregory A. Tolson insists that the court erred in thus rejecting his claims for benefits and for breach of fiduciary duty as well as in assessing court costs against him. The thrust of Tolson's argument is that the costs of treatment for his depression should have been covered by the Avondale Industries, Inc. Shipyards Division Avondale Health Plan (the "AHP"), and that benefits for the disability that resulted from such depression should have been paid under the Avondale Industries, Inc. Shipyards Division Group Insurance Plan (the "GIP"). Tolson argues that, despite the express, unambiguous limitations on coverage of "mental and nervous conditions" by these plans, he should nevertheless be covered because his depression was secondary to or caused by his Hepatitis C or by the Interferon treatment for that condition and was therefore "unusual." More particularly, Tolson insists that the plan administrator for the AHP and the GIP (collectively, "the Plans") erred in its legal interpretation of the Plans' provisions and abused its discretion in denying Tolson benefits under the Plans. According to Tolson, this occurred when the administrator treated his depression as a mental or nervous condition or disorder instead of recognizing that the Hepatitis C/Interferon-caused depression fit a narrow exception that Tolson perceives this court to have recognized in <u>Lynd v. Reliance Standard Life Insurance</u>

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 <u>et</u> <u>seq.</u>

<u>Co.</u>.[2] Tolson reads some dicta in <u>Lynd</u> to forecast the possibility that some day there might be an unusual case in which treatment of a mental disorder is necessitated by, and disability is caused by, something other than the cause of most other kinds of debilitating depressive conditions. And, of course, Tolson asserts that his is that unusual case. Disagreeing with Tolson's reading of <u>Lynd</u>, we affirm the summary dismissal of Tolson's action and the taxing of costs to him.

---

[2] 94 F.3d 979 (5th Cir. 1996).

I

## FACTS AND PROCEEDINGS

Despite Tolson's insistence to the contrary, the material facts of this case are undisputed. Tolson was employed by Avondale from 1981 through April 1987 and was a participant in and a qualified beneficiary of the Plans. He was diagnosed in December 1994 by Dr. Robert Perillo, a liver specialist at New Orleans' Ochsner Clinic and an approved medical provider under the AHP, as having "moderate chronic Hepatitis C, with mild but definite chronic active component." Tolson was successfully treated by Dr. Perillo in an experimental program using Interferon-Alpha 2a, and the AHP paid for all eligible medical charges and prescription drugs. The following May, Tolson applied to the GIP for weekly disability benefits on the basis of a statement from Dr. Perillo that Tolson suffered "Interferon-induced adverse effects (insomnia, fatigue) causing temporary disability." Following the GIP's approval of his application, Tolson started receiving weekly disability benefits. In August 1995, Tolson applied to the GIP for long-term disability benefits based on his chronic Hepatitis C. Four days later Tolson was released by Dr. Perillo to return to work. Even though the physician's statement said that Tolson was not totally disabled, he was approved for long-term benefits for 21 days, being the number of days between the end of his 90-day elimination period and the date of his return to work. Tolson received no other long-term disability benefits under the GIP.

4

The recommencement of Tolson's work was unremarkable until March 1996, when Dr. Gerald Heintz, a psychiatrist with Ochsner to whom Tolson had been referred by Dr. Perillo, diagnosed Tolson as suffering from "major depression" and treated him for that condition. According to Tolson, his depression is a secondary symptom resulting directly from his Hepatitis and the Interferon treatment he received for it.

The following month, almost eight months after he had returned to work from disability leave, Tolson quit his job. He blamed his depression for his inability to continue working.

The entire documentation for each of the Plans is contained in its Summary Plan Description ("SPD"); there are no separate trust indentures. The AHP provides comprehensive health care benefits for eligible employees and their beneficiaries, covering medical costs incurred in conformity with that plan's requirements. In the AHP, coverage of treatment of mental conditions is limited as follows:

a)    Introduction:

Note in particular that covered treatment for Mental and Nervous conditions or Substance Abuse will be provided only by West Jefferson Behavioral Medicine Center ["WJBMC"].

b)    Benefit Limitations:

Note: Coverage for Mental and Nervous conditions is provided ONLY by [WJBMC] and is subject to different limitations, deductibles and co-payments.

c)    Summary of Benefits:

5

> In order that treatment for mental and nervous conditions be covered by the [AHP], treatment must be pre-certified and provided by [WJBMC]. There is no plan benefit for services received from other sources.

Parallel provisions limiting coverage of disability by reason of mental conditions under the GIP are as follows:

> a) Weekly disability Benefits (Non-Occupational) - Benefit Limitations
>
> . . . .

> Also, benefits will not be payable for disability because of mental or nervous disorders unless hospitalized. If hospitalized, then later discharged, benefits will not continue beyond 30 days following discharge.

> b) Long-Term Disability Benefits - Benefit Limitations
>
> . . . .

> Also, benefits will not be payable for disability because of mental or nervous disorders, unless hospitalized. If hospitalized, then later discharged, benefits will not continue beyond 30 days following discharge.

Both plans establish an ERISA Review Committee (the "Committee") and endow the Committee with discretionary powers to interpret the terms of the Plans and to evaluate claims for benefits. Among other things, those provisions specify that the Committee has "sole and exclusive discretion and power to grant and/or deny any and all claims for benefits, and construe any and all issues of Plan interpretation and/or facts or issues relating to eligibility for benefits." "All findings, decisions, and/or determinations of any type made by the [Committee] shall not be disturbed unless the [Committee] act(s) in an arbitrary and/or capricious manner or

6

abuses the discretion and powers conferred by the Plan's sponsor."

After he quit working, Tolson claimed coverage of his treatment for a "major depressive disorder" and sought disability benefits on that basis as well. As no part of Tolson's treatment for depression took place at WJMBC, the plan administrator for the AHP denied his claim for psychological treatment. Similarly, his application to the GIP for long-term disability benefits was denied because he was never hospitalized for his depression. An additional road block to Tolson's coverage is the fact that Dr. Heintz is not on the list of approved referral providers.[3] Tolson's claim for coverage of psychological treatment was denied because it was not pre-certified and none of it was provided by WJBMC. Likewise, his claim for disability benefits was denied because he was never hospitalized for his nervous or mental condition. The Plans classified Tolson's claims as stemming from a distinct and separate "mental or nervous disorder or condition," terms that, Tolson notes, are not defined in the Plans. He appealed the denial of his claim, but the Committee unanimously upheld denial.

Tolson sued in March 1997, alleging wrongful denial of

---

[3] Tolson attempts to skirt the problem of having been treated by a non-approved referral provider, first by urging that his referral to Dr. Heintz by Dr. Perillo should be sufficient and, second, by stating that the original administrative record does not contain a list of approved referral providers, the latter contention being countered by the Plans which point out that the subject list was presented to the court in an exhibit to their reply brief.

benefits or, in the alternative, breach of the fiduciary duty to avoid misrepresenting the terms of available coverage. His complaint asserted that he was improperly denied payment of medical claims in connection with his treatment for depression under the AHP, and was improperly denied payment of disability benefits under the GIP. He grounded his alternative breach of fiduciary claim in the alleged misrepresentation of the terms of the Plans, both of which are employee welfare benefit plans governed by ERISA.

After some preliminary procedural skirmishing, which included the Plans' filing a motion to dismiss and Tolson's amendment of his complaint, the defendants filed a motion for summary judgment, and Tolson filed an opposition. Shortly thereafter, the district court granted the Plans' motion and entered judgment dismissing Tolson's claims and assessing costs to him. Tolson filed a motion for review of the taxation of costs which the court denied. Tolson timely filed a notice of appeal.

II

ANALYSIS

A.   Standard of Review

All grants of summary judgment are reviewed de novo.[4] "Whether the district court employed the appropriate standard in reviewing an eligibility determination made by an ERISA plan

---

[4]   FDIC v. Myers, 955 F.2d 348, 349 (5th Cir. 1992).

8

administrator is a question of law."[5]  "Therefore, we review the district court's decision <u>de</u> <u>novo</u>."[6]  When an ERISA plan vests its administrator or fiduciary with discretionary authority to determine eligibility for benefits or to construe the terms or the plan, or both, our standard of review is abuse of discretion.[7]  There is no question but that the language of the AHP and GIP vests their plan administrator with such authority.

The district court found that the Plans' language vested the plan administrator with sufficient discretion to make abuse of discretion the appropriate standard for reviewing the Committee's denial of Tolson's claims for benefits.  The district court applied the <u>de novo</u> standard to reviewing Tolson's breach of fiduciary claim.

B.    <u>Plan Interpretation</u>

In <u>Wildbur v. ARCO Chemical Co.</u>, we set forth the appropriate two-step methodology for testing the plan administrator's interpretation of the plan for abuse of discretion:

> First, a court must determine the legally correct interpretation of the plan.  If the administrator did not give the plan the legally correct interpretation, the

---

[5]  <u>Lynd</u>, 94 F.3d 979, 980-81 (citing <u>Chevron Chem. Co. v. Oil, Chem. & Atomic Workers Local Union 4-447</u>, 47 F.3d 139, 142 (5th Cir. 1995)).

[6]  <u>Id.</u> at 981.

[7]  <u>Wildbur v. ARCO Chem. Co.</u>, 974 F.2d 631, 636 (5th Cir.), <u>modified</u>, 979 F.2d 1013 (1992).  <u>See also</u> <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 113-17, 109 S. Ct. 948, 956-57, 103 L. Ed. 2d 80 (1989).

court must then determine whether the administrator's decision was an abuse of discretion. In answering [this] question, . . . a court must consider:

> (1) whether the administrator has given the plan a uniform construction,
>
> (2) whether the interpretation is consistent with a fair reading of the plan, and
>
> (3) any unanticipated costs resulting from different interpretations of the plan.[8]

Only if the court determines that the administrator did not give the legally correct interpretation, must the court then determine whether the administrator's decision was an abuse of discretion.[9] We need not proceed to the second step of the Wildbur analysis to search for abuse of discretion if we determine in applying the first step that the plan administrator's legal interpretation of the plan provisions is correct.[10]

Like the district court before us, we conclude that the plan administrator correctly interpreted the pertinent provisions of the Plans. The first element of the first Wilbur step— uniformity of construction — is neutral here, as the applicable provisions of the Plans have not previously been interpreted in light of claims

---

[8] Wildbur, 974 F.2d at 637-38 (citing Jordan v. Cameron Iron Works, Inc., 900 F.2d 53, 56 (5th Cir.), cert. denied, 498 U.S. 939, 111 S. Ct. 344, 112 L. Ed. 2d 308 (1990) (internal citation omitted).

[9] Id.

[10] Chevron, 47 F.3d at 146.

like Tolson's.

The second element of the first step of <u>Wildbur</u> —— a fair reading of the plan —— clearly favors the administrator of the Plans.  Under the AHP, medical costs for the treatment of "mental and nervous conditions" are covered only if they are (1) pre-certified, and (2) provided by WJBMC.  Under the GIP, neither weekly nor long-term disability benefits are payable unless the participant or beneficiary is hospitalized, and even then benefits continue for only 30 days following discharge from the hospital.  Thus, the <u>Wildbur</u> "fair reading" element is met by the Committee's determination that AHP limits coverage for mental and nervous conditions to pre-certified treatment at WJBMC and that GIP limits disability payments on account of such disorders or conditions to those for which hospitalization is required.  Tolson does not claim to have complied with these prerequisites.

The third element of the first step of <u>Wildbur</u> likewise favors the administrator: Any variance from the interpretation placed on the provisions in the Plans by the Committee would be likely to produce costs not anticipated by the Plans.  All costs of covering treatment provided by others than WJMBC and all costs of disability payments to non-hospitalized participants would produce costs not anticipated by the Plans.

Clearly, then, the legal interpretation of the terms of the Plans by the Committee passes the first step of the <u>Wildbur</u> test ——

11

"legally correct interpretation of the plan"[11] —— with flying colors. Inasmuch as the administrator made the legally correct interpretation, we are not compelled to proceed to the second step of Wildbur to determine whether the administrator's denial of benefits was an abuse of discretion[12] because under a correct interpretation "no abuse of discretion could have occurred."[13]

We infer that, despite his argument, Tolson is not really disagreeing with the legal interpretation of the Committee that coverage of treatment costs for nervous or mental disorders are predicated on pre-certification and treatment at WJBMC, and that payments for long-term disability caused by such disorders are predicated on hospitalization. Rather, we understand Tolson's argument to be that payments for the treatment of his "unusual" kind of depression and benefits for his "unusual" disability do not properly come within the undefined terms "mental and nervous conditions" or "mental or nervous disorders," as used respectively in the AHP and the GIP, because his depression is secondary to and caused by his hepatitis and the treatment of it with Interferon. Tolson would have us conclude that his depression is part and parcel of his hepatitis and its Interferon treatment, and thus should not be restricted by the coverage limitations for mental or

---

[11]  Wildbur, 974 F.2d at 637-38.

[12]  Id.

[13]  Spacek v. Maritime Ass'n, ILA Pension Plan, 134 F.3d 283, 292 (5th Cir. 1998).

12

nervous disorders or conditions.  He contends that, for purposes of

the Plans, his treatment for depression and his depression-caused

disability should receive the same coverage as is afforded to his

hepatitis.  It is for this proposition that he relies on <u>Lynd</u> as

creating a narrow exception for those instances — such as his —

when a traditional mental or nervous disorder is not a mental or

nervous disorder within the intendment of the Plans.  This reliance

is badly misplaced.

In <u>Lynd</u>, we expressly held that depression is a "mental

disorder," irrespective of its physical causes or symptoms.  As

noted earlier, we cannot read the holding in <u>Lynd</u> — even its dicta

— to admit of a situation (and Tolson claims that his is such a

situation) that would be a narrow exception to the universal

conclusion that depression is a mental disorder or nervous

condition.  Try as we may, we can discern no such proposition in

the <u>Lynd</u> opinion.

Indeed, we concluded in <u>Lynd</u> that the appropriate standard for

interpreting ERISA plan terminology is its ordinary meaning, not

specialized meanings.[14]  We have already noted that here the SPDs

are the only substantive plan documents.  And, SPDs are required by

law to be couched in ordinary, conversational language that is

understandable by lay participants.  This realization explains not

---

[14]  <u>Lynd</u>, 94 F.3d at 983 (quoting <u>Brewer v. Lincoln Nat'l Life
Ins. Co.</u>, 921 F.2d 150, 154 (8th Cir. 1990), <u>cert. denied</u>, 501
U. S. 1238, 111 S. Ct. 2872, 115 L. Ed. 2d 1038 (1991)).

only the absence of definitions of the terms at issue here but also the propriety of the Committee's implicit conclusion that, in the contemplation of the Plans, Tolson's depression is a mental or nervous condition or disorder.

In discussing the physical symptoms of mental disabilities in Lynd, we stated:

> If we begin with the premise that the cause of a disability is "mental" —— and the Eighth and Ninth Circuits, as well as the American Psychiatric Association, characterize "depression" as a "mental" disorder —— then to find that a disability falls outside of the term "mental disorder" (as used in an ERISA plan) because the disability has "physical" symptoms would render the term "mental disorder" obsolete in this context. As the ERISA plan in the instant case pointedly refers to "mental or nervous disorders," it would be inappropriate to effectively collapse the term "mental disorder" to include only those illnesses, if any exist, which have no "physical" manifestations.[15]

The converse is equally true: Simply because a medical problem and an ensuing disability are produced by depression (a stereotypical mental condition or disorder) that is itself the product of a pathological disease (Hepatitis) or of the medication used to treat such a disease (Interferon), the fact is not altered that the depression is and remains a mental disorder or condition. It follows inescapably that (1) coverage of the costs of treating that depression, like treating of any depression, is subject to the pre-certification and WJBMC limitations of the AHP, and (2) payment of benefits for disability produced by that depression, like

---

[15] Id. at 984.

14

disability produced by any nervous or mental disorder, is subject to the hospitalization limitations of the GIP.

Again, as the Committee satisfied the first step of the Wildbur test by making the legally correct interpretation of the Plan, we never reach the second, abuse of discretion step.  A determination that a plan administrator's interpretation is legally correct pretermits the possibility of abuse of discretion.[16]

C.    Breach of Fiduciary Duty

Tolson's efforts to justify assertion of breach of a fiduciary duty claim against the Plans by distinguishing such a claim from his claims for coverage and benefits claims are woefully unavailing.  If they are distinctions at all, they are without differences.  This was succinctly and correctly explained by the district court:

> Because Tolson has adequate redress for disavowed claims through his right to bring suit pursuant to section 1132(a)(1), he has no claim for breach of fiduciary duty under section 1132(a)(3).  Section 1132(a)(2) allows a beneficiary to bring a standard breach of fiduciary duty suit for the benefit of the subject plan.  Massachusetts Mut. Life Ins. Co. v. Russell, 105 S. Ct. 3085 (1985). In Varity Corp. v. Howe, 116 S. Ct. 1065 (1996), the Supreme Court interpreted section 1132(a)(3) to allow plaintiffs to sue for breach of fiduciary duty for personal recovery when no other appropriate equitable relief is available.  Because Tolson has adequate relief available for the alleged improper denial of benefits through his right to sue the Plans directly under section 1132(a)(1), relief through the application of Section 1132(a)(3) would be inappropriate.

> Unlike the plaintiffs in Varity, Tolson was the

---

[16]    Spacek, 134 F.3d at 292.

15

> beneficiary of two viable plans whom [sic] he had standing to sue and did sue. Further, both Plans are viable and before the Court. Because this relief was available and, indeed, utilized, it would be inappropriate for the Court to fashion any further equitable relief under Section 1132(a)(3). The simple fact that Tolson did not prevail on his claim under section 1132(a)(1) does not make his alternative claim under section 1132(a)(3) viable.[17]
> No purpose would be served by discussing this issue further.

The district court's analysis is accurate and clear, so we adopt it as our own.[18]

D.    Costs

The district court rejected Tolson's motion to review and reverse taxation of costs. The court observed that F.R.C.P. 54(d) contemplates that costs will be allowed to the prevailing party as a matter of course unless the court directs otherwise. The Plans were the prevailing parties and the court did not "otherwise direct," so the Clerk of Court properly taxed costs to Tolson as a matter of course.

In particular, Tolson objects to the Plans' seeking

---

[17]    The district court relied in part — correctly, we conclude — on Wald v. Southwestern Bell Corp. Customcare Medical Plan, 83 F.3d 1002 (8th Cir. 1996) (determining that plaintiff failed to state a cause of action for breach of fiduciary duty in reviewing claim as she sought no different relief than that available under claim for benefits under another section of ERISA).

[18]    We have also carefully considered the other issues and assignments of error that Tolson ascribes to the rulings of the district court by reviewing counsel's appellate brief and hearing his arguments to the court, including his complaints regarding the court's grant of summary judgment and its rulings on discovery. It suffices that we discern no reversible error in any of the rulings of the district court.

reimbursement of the costs of reproducing the whole administrative record, insisting that the entire record was not necessary for summary judgment disposition. Tolson also advances equitable arguments, contending that his suit was neither frivolous nor instituted in bad faith because his novel contention is, essentially, res nova. He also pleads financial inability to pay.

We agree with the Plans' contention that the taxing of costs was routine and appropriate here. Given the burgeoning jurisprudence in this circuit and elsewhere concerning the extreme deference that courts must give to plan administrators vested with discretionary authority to interpret plans and to award or deny benefits, Tolson's self-proclaimed res nova argument is more correctly seen as specious sophistry, approaching frivolousness. Indeed, plan participants and beneficiaries who continue to mount attacks such as Tolson's in the face of such an established body of law may well find themselves assessed with much more than court costs. Be that as it may, it suffices here that, as we do not reverse a district court's taxation of costs in the absence of clear abuse of discretion,[19] we will not disturb that assessment against Tolson.

---

[19] Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 334 (5th Cir.), cert. denied, 516 U.S. 862, 116 S. Ct. 173, 113 L. Ed. 2d 113 (1995).

III

CONCLUSION

For the foregoing reasons we hold that the legal interpretation of the pertinent language of the Plans by the plan administrator was correct, ending the need to continue our review, (albeit the plan administrator's determination that Tolson's depression was subject to the Plans' provisions limiting coverage of nervous or mental conditions or disorders was neither incorrect nor an abuse of discretion). We also hold that the district court correctly dismissed Tolson's breach of fiduciary duty claims and did not abuse its discretion in taxing costs to Tolson. For essentially the same reasons, we assess costs of this appeal to Tolson and caution him —— and future ERISA plan participants and beneficiaries similarly situated —— that fomenting and prosecuting litigation of this ilk in the face of plan provisions vesting administrators with discretion to interpret provisions of ERISA plans and entitlement to benefits under such plans, could result in sanctions more stringent than mere assessment of costs, including, without limitation, attorneys' fees and double costs under F.R.A.P. 38 for frivolously appealing adverse dispositions of the district court. The judgment of the district court is

AFFIRMED at appellant's cost.