Harold A. **KERGOSIEN,**
**et al., Plaintiffs,**

v.

**OCEAN ENERGY INCORPORATED,**
**Defendant.**

**Civil Action No. H–00–3023.**

United States District Court,
S.D. Texas.

Aug. 5, 2003.

Henry Kollenberg, Houston, TX, for Plaintiff.

Gibson Walton, Houston, TX, for Defendant.

Opinion on Vacating Arbitral Award

HUGHES, District Judge.

### 1. *Introduction.*

To facilitate a merger, a company amended its severance plan to exclude employees who retained their jobs with sold divisions. After an arbitrator found for the excluded employees, the company moved to vacate the award. Because the award was inconsistent with the plan's text, the committee's authority, and the law, it will be vacated, with the claims remanded for a new arbitration.

### 2. *Background.*

Seagull Energy had a "management stability plan" that gave severance benefits to its employees if they were fired within two years of a change of control of the company, like a merger. It paid a multiple of the worker's salary times his tenure; strangely, the medical insurance benefits were longer the higher the person was paid, as if executives need health insurance more than lower-paid workers.

The plan was administered by Seagull's compensation committee. The committee was composed primarily of directors and senior executives. It had plenary authority to maintain and amend the plan as well as deciding who was covered. This plan was separate from the customary employee benefit plan at Seagull. It was a defense from a bid for control unwelcomed by management, like poison pills and golden parachutes. *See* Michael C. Jensen, *The Takeover Controversy: Analysis and*

*Evidence,* in *Knights, Raiders and Targets: The Impact of the Hostile Takeover* (John Coffee, Louis Lowenstein, and Susan Rose–Ackerman, eds.1988)

In 1998, Seagull and Ocean Energy proposed to merge. One impediment to the deal was the cost of the stability plan. During negotiations, the committee amended the plan twice. The second amendment excluded from benefits those employees who were no longer employed by Seagull but retained their jobs with a successor company that bought their division.

Ocean and Seagull merged the day after the second amendment. Two days later, the construction division of Seagull's oil and gas company was sold to Buckeye Gulf Coast Pipe Lines. Although the employees in the construction business were hired by Buckeye, they asked for severance benefits from Seagull.

The committee denied the employees' claims. The arbitrator reversed the decision of the committee and awarded $1.5 million to the employees.

**3.** *Review of Arbitrator.*

■ Under federal law, a court must vacate an arbitrator's award if the process is fundamentally flawed. When an award is tainted by partiality, founded on an exercise of power not conferred, or derived from facts or law not in the record, it must be vacated. *See* 9 U.S.C. § 10(a); *Williams v. Cigna Fin. Advisors, Inc.,* 197 F.3d 752, 758 (5th Cir.1999).

The award will be vacated and the case will be arbitrated again because the arbitrator exceeded his powers, misunderstood the law, and misread the contract.

**4.** *Committee Decision.*

■ The arbitrator did not follow the law or the contract because he used the wrong standard in reviewing the committee's decision. The Seagull plan authorized the committee to interpret the plan, decide all questions about it, and determine eligibility of participants under it. Because they are explicitly given the authority to interpret the plan, an arbitrator may overrule the committee's decisions only if they are arbitrary. *See Matassarin v. Lynch,* 174 F.3d 549, 563 (5th Cir. 1999).

The arbitrator decided that the committee abused its discretion. He said that the committee had a conflict of interest because the committee members indirectly benefitted from the denial of benefits. He also used a standard for interpretation to evaluate an amendment.

The arbitrator recoiled from the committee's lack of independence. As a result, the arbitrator gave the committee's interpretation of the plan little to no deference. The arbitrator's decision to apply a lower standard exceeded his powers and contradicts the law.

**5.** *Independence.*

The committee was never independent. It was created by Seagull's management for Seagull's corporate purposes. Creating the stability plan was a unilateral act by the company. In an ordinary plan, the benefits are contemporaneous with the compensation to the worker, whether partially deducted from pay or added to it. The worker's direct compensation is not part of an employee benefit plan; it is something that management raises or lowers according to a plan but not according to a statutory employee benefit plan.

This was a contingent, future benefit. The committee could have extended the period for termination after a change in control to three years, but it could only have done that if it had the commitment from management to fund the gift. It

could have also shortened the period to six months.

In fact, it simply said that people are not "fired" when they keep the jobs they had at Seagull under a new employer because of a transfer of an operation to a new corporation. Even if in some imagined world this was harsh, the arbitrator was authorized to decide disputes about whether a particular employee was in fact covered by the terms of the plan; he was not confided the task of evaluating the merits of the plan or the changes to it. *See Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). A company must be allowed to determine how it compensates its employees. As long as a company correctly modifies its benefits plan, an employee's compensation—or lack of it—cannot be questioned.

Neither the workers nor the arbitrator may use the compensation committee's dependence and management-affiliation to question its decision to eliminate one class of fired workers from the severance plan. The committee members were responsible for the operation and finances of the company as well as the operation of this plan. That is true of most compensation committees. Under management's delegation, this committee set the pay and other benefits not as a trustee for the workers but as the agents for the owners.

The committee's putative conflict of interest cannot be a breach of duty when it lowers salaries but not when it raises them. The arbitrator cannot discount the committee's judgment on interpretation; its members had alternative roles in the company because those roles made it possible for the benefit to be created in the first place.

6. *Fiduciary Duty.*

The arbitrator concluded that the committee had a fiduciary duty to the employ-ees to administer the plan. That much is true. A plan must be faithfully managed while it exists. The arbitrator, however, included in the administrative duty an obligation to favor the beneficiaries and to warn them of proposed amendments.

Creation, amendment, and termination of the plan are management decisions—not plan administration, not fiduciary acts. *See Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). The compensation committee can amend the plan, adopt a new plan, and terminate a plan without implicating a duty to the employees.

The arbitrator took the administrator's duty to use employee and employer contributions prudently and applied it to the decisions about the plan's scope and existence. His reasoning is untethered from reality because there were *no* funds in the plan. The committee had no occasion to use bad investment judgment. The employees lost none of their money. *See McDonald v. Provident Indemnity Life Ins. Co.,* 60 F.3d 234, 238 (5th Cir.1995).

Further, the fiduciary has no duty to tell employees about proposed changes to the plan; that duty would be unworkable. *See Bettis v. Thompson,* 932 F.Supp. 173, 175 (S.D.Tex.1996). If there were a duty to warn, it would not apply to these workers; they had no option under the old plan that was taken away. This plan did not offer a grant to employees retiring one day, leaving those who retired the day before with only their normal retirement benefits. These plaintiffs could not have fired themselves the day after the merger to gain the stability bonus.

The payment depended on (a) a change of control and (b) a firing. If the plan had not changed, they would have been covered, but that refers back to the decision

to have the plan at all. The committee could have decided to end it for everyone at Seagull, a few, or none. No warning could have allowed the workers to choose differently, making the warning irrelevant.

Even if the employees could prove that the committee breached its duty, the employees cannot simultaneously bring a claim for benefits with a claim for breach of fiduciary duty. *See Tolson v. Avondale Indus., Inc.,* 141 F.3d 604, 610 (5th Cir. 1998). If the employees want their benefits, their fiduciary claim is barred.

### 7. *Amendments.*

The arbitrator also was wholly wrong in deciding that the fifth amendment to the plan was invalid. The fourth one says that, when control changes, "severance benefits shall be payable as provided herein, the Plan shall be, and is hereby terminated." He decided that the Fourth terminated the whole plan, ending the committee's ability to modify it. His interpretation is incorrect for a couple of reasons, although he could be forgiven a little for his confusion with the clumsy, thoughtless draftsmanship of the documents.

The plan exists or it does not exist. If it subsisted to pay the termination bonus, it existed for the committee to contract or expand it. The clause says both that the plan *is* and *will be* terminated. The only intelligible, logical reading is that the plan was effectual until the merger. As long as it existed, under federal law, an administrator could amend it without an explicit reservation. *See McCall v. Burlington Northern/Santa Fe Co.,* 237 F.3d 506, 513 (5th Cir.2000).

A reading of the fourth shows that the plan remained in effect until Ocean and Seagull completed the merger. It had to continue beyond the merger because for the plaintiffs to get paid, control had to

change and they had to be fired. If the plan ended the day before the merger, the first qualifying event was missing—no change of control during the plan's life. If the plan died at the merger, the second qualifying event was missing.

The fifth then modified the plan by redefining an involuntary termination. The new definition excluded the plaintiffs—employees who were given similar jobs and similar pay with another company because their division was sold.

If the fourth terminated the plan except for the severance benefits, the committee could amend them to exclude the plaintiffs. If the entire plan was terminated, there were no benefits. Either way, the arbitrator could not logically award severance benefits under any standard.

### 8. *Equity.*

The arbitrator seems to have been influenced by some sense of fairness. These workers did not rely on the existence of the plan to make choices in their lives; even if that were the case, the law does not allow recovery of reliance damage or other extra-plan benefits. Second, these workers did nothing to earn this benefit the day they were covered. They invested no money, spent no time, forewent no opportunity; their jobs—with them aboard—have been moved from one owner to another.

### 9. *Conclusion.*

■ The arbitrator's award will be vacated. The arbitrator exceeded his power by applying the wrong standard for reviewing the compensation committee's decision. He misconstrued the contract and awarded damages for severance pay based on his personal concept of fairness and bad law, not the contract. He misunderstood

the meaning and function of these fiducia-ries.

When an arbitrator's award is vacated, the remedy is to remand for further arbitration. These claims will remanded to a new arbitrator. *See HMC Management Corp. v. Carpenters Dist. Council,* 750 F.2d 1302, 1305 (5th Cir.1985).