NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0131n.06

No. 14-5332

## UNITED STATES COURTS OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| EDWARD SANFORD, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Feb 13, 2015 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| LIFE INSURANCE COMPANY OF NORTH | ) | COURT FOR THE MIDDLE |
| AMERICA, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

**BEFORE:** **NORRIS, ROGERS, and WHITE, Circuit Judges.**

**ROGERS, Circuit Judge**. On November 3, 2010, Edward Sanford retired from his job as an executive at LifePoint Hospitals, Inc. Five days later he injured his back while deplaning from his private aircraft. Sanford sought short- and long-term disability coverage from LifePoint's insurer, Life Insurance Company of North America, which denied coverage on the ground that Sanford's alleged disability began after his employment at LifePoint had ended. The district court affirmed the denial of benefits, concluding that, because Sanford was not in "Active Service" when the injury occurred, he was not eligible for benefits. Sanford appeals that decision. Because he was not in "Active Service" at the time of his injury, however, and because "Active Service" is a prerequisite for coverage under the relevant plans, Sanford was not entitled to benefits.

Sanford was the CEO/Administrator for LifePoint. On October 4, 2010, he notified LifePoint in writing that he was resigning from the company effective November 3, 2010. *Sanford v. LINA*, Case No. 2:12-cv-56, doc. # 19-2, PageID 86. On the date of his retirement, he had accrued four weeks of paid time off ("PTO"), which LifePoint continued to pay through November 27, 2010.

On November 8, 2010, Sanford flew his private plane to Louisiana. While deplaning, he fractured his back. He was subsequently diagnosed with multiple myeloma.

In April 2011, Sanford applied to LifePoint's insurer, Life Insurance Company of North America ("LINA"), for short- and long-term disability benefits. LINA denied both claims on the ground that Sanford was not a LifePoint employee at the onset of his alleged disability, so that he was ineligible for coverage under the relevant policies ("the Plans"). A.R. 240-42, 246.

Sanford used LINA's internal appeals process to challenge the denials. LINA investigated Sanford's claims by contacting LifePoint to confirm that Sanford's last day of employment had been November 3, 2010. LifePoint confirmed as much, even double-checking with the current CEO of the facility where Sanford had worked. *Id.* at 159. After receiving confirmation from LifePoint that Sanford was retired at the time of his injury, LINA affirmed its denials on the ground that Sanford was not in "Active Service" at the time of his injury, meaning, under the Plans, that he was not eligible for benefits. *Id.* at 230-32, 254.

Several months later, Sanford filed this action for wrongful denial of short- and long-term disability benefits. Both parties moved for judgment on the pleadings and the district court ultimately granted LINA's motion for judgment on the administrative record. *Sanford v. Life Ins. Co. of N. Am.*, 1 F. Supp. 3d 829 (M.D. Tenn. 2014). The district court concluded that LINA had not acted arbitrarily or capriciously in concluding that Sanford was ineligible for benefits

because Sanford was retired when the injury occurred. The Plans provided that a participant's coverage would terminate in the event that the participant: (1) ceased to be in "Active Service"; or (2) was no longer a member of an "eligible class." A.R. 275. The district court held that LINA's decision was rational because, at the time of the injury, Sanford was neither a member of an "eligible class," nor in "Active Service," and was also not entitled to invoke the Continuation of Insurance Provision in the Plans. *Sanford*, 1 F. Supp. 3d at 835. Sanford appeals that decision.

To prevail on appeal, Sanford must demonstrate that LINA's conclusion—that he was not "in Active Service" at the onset of his alleged disability—was arbitrary or capricious. *See Firestone Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). According to the Plans:

An employee is in Active Service on a day which is one of the Employer's scheduled work days if either of the following conditions are [*sic*] met.

1. The Employee is performing his or her regular occupation for the Employer on a full-time basis. He or she must be working at one of the Employer's usual places of business or at some location to which the employer's business requires an Employee to travel.
2. The day is a scheduled holiday or vacation day and the Employee was performing his or her regular occupation on the preceding scheduled work day.

An Employee is in Active Service on a day which is not one of the Employer's scheduled work days only if he or she was in Active Service on the preceding scheduled work day.

A.R. 286. Sanford does not meet the first condition because he was not "performing his . . . regular occupation for [LifePoint] on a full time basis" at the onset of his alleged disability. *Id.* Thus, he is only eligible for coverage under the Plans if he met the second condition.

LINA's conclusion that Sanford did not meet the second condition was neither arbitrary nor capricious because LINA could reasonably have determined that Sanford was not on a "vacation day" when he injured himself, but rather retired. The Plans do not define "vacation,"

so LINA was required by law to interpret that term according to its ordinary meaning. *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004). A "vacation," LINA could reason, must be *from* something—be it inclement weather, the monotony of one's daily routine, or, as is frequently the case, job responsibilities. *See, e.g.*, WEBSTER'S II NEW COLLEGE DICTIONARY 1217 (2001) (defining "vacation"). Particularly in the context of an *employer's* disability plan, it is reasonable—and not arbitrary or capricious—to read "vacation" to mean "vacation from the Plan participant's job responsibilities." On this reading, Sanford could not "vacation" from his job responsibilities because, having retired, he had no job responsibilities whatsoever. Thus, LINA could reasonably conclude that Sanford was not on "vacation" when the injury occurred, meaning he would not have been "in Active Service" for purposes of receiving benefits under the Plans.

Sanford argues that LINA's interpretation of "vacation" is artificially narrow, but language in the Plans suggests otherwise. Specifically, the Continuation of Insurance provision in the Plans states that, "if an Employee's Active Service ends due to layoff, termination of employment, or any other termination of the employment relationship, insurance will terminate and Continuation of Insurance under this provision will not apply." A.R. 307. The clear implication is that "an Employee's Active Service ends" upon "any [] termination of the employment relationship." LINA's conclusion—that Sanford was not "in Active Service" at the onset of his disability—is in keeping with the Continuation of Insurance provision, whereas Sanford's proffered interpretation of "Active Service" is not. That, too, undermines Sanford's argument that LINA's decision in this matter was arbitrary or capricious.

Sanford makes a few other arguments, none of which is compelling. First, he points out that, at the time of the injury, his former employer was still deducting insurance premiums from

his payouts. But an otherwise ineligible employee does not somehow become eligible for coverage simply because he continued to pay premiums. *Moss v. Unum Life Ins. Co.*, 495 F. App'x 583, 594 (6th Cir. 2012). Sanford also cites a number of cases for the proposition "that unused vacation time at the end of the employment relationship may extend the period of employment for purposes of benefit eligibility and/or calculation." He did the same thing at the district court and the district court persuasively explained why each case cited by Sanford was inapposite. *Sanford*, 1 F. Supp. 3d at 836–37.

The judgment of the district court is AFFIRMED.