# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 19, 2016

No. 16-30354

Lyle W. Cayce
Clerk

TAMMY BRISCOE, Individually and on behalf of Robert Briscoe (Deceased),

Plaintiff - Appellant

v.

METROPOLITAN LIFE INSURANCE COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:14-CV-433

Before WIENER, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Tammy Briscoe, the widow of Robert Briscoe, challenges the denial of benefits by Metropolitan Life Insurance Company ("MetLife") under the deceased's group life insurance plan. The district court granted summary judgment in favor of MetLife. For the reasons set forth below, we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-30354

I

Robert Briscoe's employer offered a group life insurance plan that was insured under a policy issued by MetLife. Robert enrolled in the plan, and he received basic and supplemental life insurance coverage. MetLife served as the claims administrator of the plan.

Robert's employment was terminated on May 16, 2012. After that, his employer sent him a check for 30.67 hours of accrued but unused vacation time. He died on June 19, 2012, 34 days after his employment had been terminated.

The plan provided that benefits would be paid if an insured died within 31 days after his insurance ends. Robert's widow and beneficiary, Tammy Briscoe ("Briscoe"), made a claim for benefits, which MetLife denied on the basis that Robert's insurance had ended on May 16, 2012—the date he was terminated.

Briscoe brought a claim against MetLife under ERISA, 29 U.S.C. § 1132(a)(1)(B), for recovery of insurance benefits. The parties filed cross motions for summary judgment based on the MetLife administrative record. Briscoe argued in part that Robert's accrued, unused vacation time extended the date that his insurance ended by approximately four days, so that Robert died within the 31-day benefits window. The district court granted MetLife's motion and denied Briscoe's motion, holding that MetLife's interpretation of the plan was legally correct and that it did not abuse its discretion in denying benefits. Briscoe appeals.

II

We review a summary judgment de novo, applying the same standards as the district court. *Koehler v. Aetna Health Inc.*, 683 F.3d 182, 184 (5th Cir. 2012). We also review de novo a district court's determination whether a claims administrator abused its discretion. *Herring v. Campbell*, 690 F.3d 413, 415 (5th Cir. 2012).

2

No. 16-30354

III

We employ a "two-step methodology for testing the plan administrator's interpretation of the plan for abuse of discretion." *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 608 (5th Cir. 1998) (citing *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637-38 (5th Cir. 1992)). First, the court "must determine the legally correct interpretation of the plan." *Id.* (citing *Wildbur*, 974 F.2d at 637-38). Second, "[o]nly if the court determines that the administrator did not give the legally correct interpretation, must the court then determine whether the administrator's decision was an abuse of discretion." *Id.* (citing *Wildbur*, 974 F.2d at 637-38).

Briscoe first challenges the district court's holding that MetLife's interpretation of the plan was legally correct. At this step, we must consider:

(1) whether the administrator has given the plan a uniform construction[;]

(2) whether the interpretation is consistent with a fair reading of the plan[;] and

(3) any unanticipated costs resulting from different interpretations of the plan.

*Wildbur*, 974 F.2d at 637-38. "The most important factor to consider" is "whether the administrator's interpretation is consistent with a fair reading of the plan." *Gosselink v. Am. Tel. & Tel., Inc.*, 272 F.3d 722, 727 (5th Cir. 2001).

As there appears to be no evidence in the record relevant to the first and third factors, our analysis turns on the second and most important factor: whether MetLife's denial of benefits was "consistent with a fair reading of the plan." *Wildbur*, 974 F.2d at 638. "An administrator's interpretation is consistent with a fair reading of the plan if it construes the plan according to the plain meaning of the plan language." *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 841 (5th Cir. 2013) (internal quotation marks omitted).

No. 16-30354

Here, the plan provides that if an insured "die[s] within 31 days after . . . life insurance ends," MetLife will pay "the amount You were entitled to convert." The plan further provides that insurance ends on the earliest of several contingencies, including: "the date Your employment ends; Your employment will end if You cease to be Actively at Work in any eligible class." It defines "Actively at Work" as follows:

> You are performing all of the usual and customary duties of Your job on a Full-Time or Part-Time basis. This must be done at:
>
> • the Policyholder's place of business;
> • an alternate place approved by the Policyholder; or
> • a place to which the Policyholder's business requires You to travel.
>
> You will be deemed to be Actively at Work during weekends or Policyholder approved vacations, holidays or business closures if You were Actively at Work on the last scheduled work day preceding such time off.

MetLife interpreted the plan as requiring that Robert's insurance end on May 16, 2012—the date he was terminated—resulting in his death falling outside of the 31-day benefits window. The district court reviewed the plan language and determined that MetLife's interpretation was "based on a fair reading" of the plan terms and thus legally correct. It relied in part on the plan's definition of "Actively at Work." According to the district court, "[a] terminated employee cannot perform his duties on a part-time or full-time basis and cannot return to work, even if [he has] accrued vacation time."

We agree. Robert's unused vacation time did not extend the date his "insurance ends" past the date his employment was terminated. "Policyholder approved vacation[]" is described in the policy as "time off." Under a plain reading of the plan terms, an employee cannot be on approved vacation—i.e., taking time off—after being fired. *See, e.g.*, *Sanford v. Life Ins. Co. of N. Am.*, 591 F. App'x 511, 512-13 (6th Cir. 2015) ("A 'vacation' . . . must be *from*

4

something . . . . [The insured] could not 'vacation' from his job responsibilities because, having retired, he had no job responsibilities whatsoever."). Robert's final paycheck included a payout for vacation time already earned but not used; it did not extend the duration he was employed or the date his insurance ended.[1]

Because MetLife's interpretation of the unambiguous terms of the plan was legally correct, our analysis ends there. *See Tolson*, 141 F.3d at 608.

## IV

The judgment of the district court is AFFIRMED.

---

[1] Briscoe relies on *Williams v. Bridgestone/Firestone, Inc.*, 954 F.2d 1070 (5th Cir. 1992), in which there was evidence that the employer "specifically told and assured" the insured employee that his accrued vacation time would be added to his service time for purposes of calculating disability benefits. *Id.* at 1072. Here, in contrast, Briscoe does not allege that Robert's employer made any representations regarding how his unused vacation time would affect the date his insurance ended.