

January 17, 2017

Mr. Lloyd B. Tisdale                                  Opinion No. KP-0128
President
San Jacinto River Authority                          Re:  Whether certain financial transactions of
Post Office Box 329                                  the San Jacinto River Authority comply with
Conroe, Texas 77305                                  the Public Funds Investment Act and the
                                                     Public Funds Collateral Act (RQ-0118-KP)

Dear Mr. Tisdale:

You ask whether five particular financial transactions contemplated by the San Jacinto River Authority ("Authority") fully comply with the Public Funds Investment Act ("PFIA") and the Public Funds Collateral Act ("PFCA").[1]  At the outset, we note that your questions involve the consideration of many fact issues.  Because such fact intensive inquiries are beyond the scope of an attorney general opinion, we cannot approve of the proposed transactions as a matter of law but can offer only general guidance.

We begin with an overview of the two statutes you raise.  The PFIA, chapter 2256 of the Government Code, generally governs the investment of public funds under the control of the governing body of certain entities.  See TEX. GOV'T CODE § 2256.003; see also id. § 2256.001 (providing that chapter 2256 "may be cited as the Public Funds Investment Act").  It authorizes investment of public funds "in investments authorized under this subchapter in compliance with investment policies approved by the governing body and according to the standard of care prescribed by Section 2256.006."  Id. § 2256.003(a) (applying to local governments); see also id. §§ 2256.002(7) (defining "local government" to include "a district or authority created under . . . Section 59, Article XVI, Texas Constitution" such as the Authority), 2256.009–.016 (enumerating the types of authorized investments).  You indicate that sections 2256.009 and 2256.010 are relevant to the types of investments you describe.  See Request Letter at 2–3.

Section 2256.009 authorizes the investment of public funds in obligations of or guaranteed by governmental entities, and can include:

(1)  obligations, including letters of credit, of the United States or its
agencies and instrumentalities; [and]

---

[1]See Letter from Mr. Lloyd B. Tisdale, President, San Jacinto River Auth., to Honorable Ken Paxton, Tex. Att'y Gen. at 6–10 (July 20, 2016), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

. . .

> (4) other obligations, the principal and interest of which are unconditionally guaranteed or insured by, or backed by the full faith and credit of, this state or the United States or their respective agencies and instrumentalities, including obligations that are fully guaranteed or insured by the Federal Deposit Insurance Corporation or by the explicit full faith and credit of the United States[.]

*Id.* § 2256.009(a)(1), (4) (excluding investments listed in subsection 2256.009(b)); *but see id.* § 2256.009(b) (identifying types of investments that are not authorized investments). Section 2256.010 provides that

> [a] certificate of deposit or share certificate is an authorized investment . . . if the certificate is issued by a depository institution that has its main office or a branch office in this state and is:
>
> (1) guaranteed or insured by the Federal Deposit Insurance Corporation . . . ; [or]
>
> (2) secured by obligations that are described by Section 2256.009(a) . . . [.]

*Id.* § 2256.010(a)(1)–(2). By its plain language, subsection 2256.010(a)(2) expressly incorporates the types of secured investments authorized in subsection 2256.009(a). *See id.*

The PFCA, chapter 2257 of the Government Code, governs the collateral requirements for deposits of certain public funds.[2] *See id.* §§ 2257.001–.114; *see also id.* § 2257.001 (providing that chapter 2257 "may be cited as the Public Funds Collateral Act"). Generally, chapter 2257 requires deposits of public funds to be secured by an eligible security as collateral for the protection of public money. *See id.* § 2257.021. The PFCA sets out what constitutes an eligible security, prescribes the required total value of the eligible security used to secure a deposit, and governs the contracts between the public entity and a depository and between a depository and its custodian. *See id.* §§ 2257.002(4) (defining "eligible security"), 2257.022 (setting amount of required collateral), 2257.024 (providing for contract with depository bank), 2257.041 (governing a depository's deposit of security with custodian). For purposes of your questions, it is important to note that an eligible security under the PFCA can be an authorized investment security under provisions of the PFIA. *See id.* §§ 2257.002(4)(B) (defining "eligible security" to include an investment security), 2257.002(5)(C) (defining "investment security" to include "a security in which a public entity may invest under Subchapter A, Chapter 2256").

---

[2]The phrase "deposit of public funds" in chapter 2257 refers to funds of a public entity that the Comptroller does not manage under chapter 404 and that are held as a demand or time deposit by an authorized depository institution. TEX. GOV'T CODE § 2257.002(3).

In your first question, you inquire whether the Authority would "be fully in compliance with the requirements of the PFIA if it deposited $200,000 of its funds in a time deposit account fully insured by the FDIC[.]" Request Letter at 6; *see also* 12 U.S.C. § 1821(a)(1)(E) (establishing $250,000 as the standard maximum deposit amount for purposes of the Federal Deposit Insurance Act). In this question you frame the legal issue as whether a time deposit account is an "other obligation[], . . . including obligations that are fully guaranteed or insured by the [FDIC]" under Government Code subsection 2256.009(a)(4). Request Letter at 6. You note that this office has previously determined that a "demand deposit" account could be an "other obligation" under section 2256.009. *Id.* at 7; *see* Tex. Att'y Gen. Op. No. GA-0834 (2011) at 1 ("We have found nothing in statutory or case law that would indicate that a demand account cannot be properly deemed an 'other obligation' under section 2256.009 of the Government Code.").

In contrast to a "demand deposit," a "time deposit" is a "deposit for which there is in force a contract providing that neither the whole nor a part of the deposit may be withdrawn by check or otherwise before the expiration of the period of notice that must be given in writing in advance of a withdrawal." TEX. GOV'T CODE § 404.001(7) (defining "time deposit" for purposes of chapter 404, Government Code, governing Comptroller's management of the State treasury); *see also* TEX. LOC. GOV'T CODE § 105.001(5). The primary difference between the two types of accounts is when the depositor may withdraw funds. Nothing in the language of section 2256.009 suggests that this distinction would prevent a time deposit from qualifying as an investment under that section. Thus, consistent with Opinion GA-0834, a court could conclude that a time deposit account fully insured by the FDIC is within the scope of an "other obligation" under subsection 2256.009(a)(4).

You next ask whether the Authority would

> be fully in compliance with the requirements of the PFIA and the PFCA if it placed $10,000,000 of its funds in a certificate of deposit issued by a depository institution that has its main office or a branch office in Texas and is backed by a federal home loan bank letter of credit securing the full deposit amount and any accrued interest[.]

Request Letter at 7. Under section 2256.010, a certificate of deposit must be (1) guaranteed or secured by the FDIC; or (2) secured by obligations that are described by subsection 2256.009(a). *See* TEX. GOV'T CODE § 2256.010(a). Because $10,000,000 is in excess of the FDIC deposit insurance, you suggest a subsection 2256.009(a)(1) obligation can secure the amount in excess of $250,000. Subsection 2256.009(a)(1) authorizes an investment in "obligations, including letters of credit, of the United States or its agencies and instrumentalities." *Id.* § 2256.009(a)(1), *see also id.* § 2257.002(4)(F) (providing that a letter of credit from a federal home loan bank is an "eligible security"); *see also* Request Letter at 7. The language of subsection 2256.009(a)(1) provides that a letter of credit can be an obligation of the United States or its agencies or instrumentalities. TEX. GOV'T CODE § 2256.009(a)(1). Given the clear language of the statute, you argue that the dispositive issue is whether a federal home loan bank is such an agency or instrumentality of the United States. *See* Request Letter at 7–8.

The Federal Home Loan Bank Act created the Federal Home Loan Bank ("FHLB") system to provide a reliable source of funds to homebuyers. *See generally* 12 U.S.C. §§ 1421–449. Twelve regional banks comprise the system along with the Office of Finance. 12 C.F.R. § 1273.1. The twelve regional banks are federally chartered but privately capitalized, privately owned, and managed independently of the government. *See* 12 U.S.C. §§ 1426 (providing for capital structure), 1427 (vesting management in a privately elected board of directors). Each regional bank is authorized to make secured advances to its member banks. *Id.* § 1430. And each regional bank has the power to borrow and give security and to pay interest thereon, and to issue debentures, bonds, or other evidences of obligation therefor. *Id.* § 1431.

Judicial treatment of an FHLB as an agency or instrumentality of the United States varies depending on the context. In the context of a dispute involving attorneys' fees between different FHLBs, the Ninth Circuit Court of Appeals, in a frequently cited opinion, determined that the FHLB is "a federal instrumentality organized to carry out public policy and its functions are wholly governmental." *Fahey v. O'Melveny & Myers*, 200 F.2d 420, 446 (9th Cir. 1952). But a more recent, unreported decision from a federal district court distinguished *Fahey's* conclusion based on subsequent federal legislative changes to the FHLB system that reduced government control over FHLBs. *See Fed. Home Loan Bank of San Francisco v. Deutsche Bank Secs., Inc.*, 2010 WL 5394742, *9 (N.D. Cal. 2010) (unpublished) (noting that "Congress removed the power of Federal Home Loan Banks to serve as agents of the federal government in supervising federal savings and loan institutions"). In *Deutsche Bank Securities*, the court used a six-factor test to determine that the FHLB of San Francisco was not a governmental agency for purposes of the Federal Tort Claims Act. *See id.* at **9–11 (citing *In re Hoag Ranches v. Stockton Prod. Credit Ass'n*, 846 F.2d 1225, 1227–28 (9th Cir. 1988)). The six *Hoag* factors are:

> (1) the extent to which the alleged agency performs a governmental function; (2) the scope of government involvement in the organization's management; (3) whether its operations are financed by the government; (4) whether persons other than the government have a proprietary interest in the alleged agency and whether the government's interest is merely custodial or incidental; (5) whether the organization is referred to as an agency in other statutes; and (6) whether the organization is treated as an arm of the government for other purposes . . . .

*Id.* at *9. Other federal courts have utilized the same six-factor test to determine that other FHLBs are not a government "agency." *See Fed. Home Loan Bank of Seattle v. Barclays Capital, Inc.*, No. C10-0139 RSM, 2010 WL 3662345, at *2–4 (W.D. Wash., Sept. 1, 2010) (unpublished), *Fed. Home Loan Bank of Seattle v. Deutsche Bank Secs., Inc.*, 736 F. Supp. 2d 1283, 1287–88 (W.D. Wash. 2010). In Texas, in the unemployment compensation context, the Texas Supreme Court adopted an opinion that determined, after considering holdings from three other states, that the member banks of the FHLB system are not instrumentalities of the federal government. *See Tex. Unemp't Comp. Comm'n v. Metro. Bldg. & Loan Ass'n*, 139 S.W.2d 309, 312–13 (Tex. Civ. App.—Austin 1940, writ ref'd); *see also Rheams v. Bankston, Wright & Greenhill*, 756 F. Supp. 1004, 1008 (W.D. Tex. 1991) (holding the FHLB of Dallas is not a "federal agency" in a federal jurisdiction context).

Even in contexts unrelated to federal banking, the cases considering the key terms use different analytical frameworks, yielding different results. The Fifth Circuit used factors from an Internal Revenue Service Ruling to determine whether an employee sponsored benefit plan was an agency or instrumentality of the government in an ERISA context. *See generally Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417–18 (5th Cir. 2016) (citing IRS Rev. Rul. 89-49). The court set out the following factors:

> One of the most important factors to be considered . . . is the degree of control that the federal or state government has over the organization's everyday operations. Other factors include: (1) whether there is specific legislation creating the organization; (2) the source of funds for the organization; (3) the manner in which the organization's trustees or operating board are selected; and (4) whether the applicable governmental unit considers the employees of the organization to be employees of the applicable governmental unit.

*Id.* at 419. In the similar context of considering the meaning of a "state instrumentality," a Texas court of appeals looked to the common meaning of the term instrumentality. *See De Santiago v. W. Tex. Cmty. Supervision & Corrs. Dep't*, 203 S.W.3d 387, 394 (Tex. App.—El Paso 2006, no pet.). It defined the term for purposes of the Texas Human Rights Commission Act as a "branch of the state or a means through which a function of the state is accomplished." *Id.* (citing BLACK'S LAW DICTIONARY 802 (7th ed. 1999)). Another Texas court of appeals construed "state instrumentality" under the same act to mean "an entity created pursuant to Texas statutory authority, and whose purpose includes the performance of public and governmental functions." *Dallas/Fort Worth Int'l Airport Bd. v. Funderburk*, 188 S.W.3d 233, 237 (Tex. App.—Fort Worth 2006, pet. granted, judgm't vacated w.r.m.).

However, no cases of which we are aware directly decide whether an FHLB is an agency or instrumentality of the United States for purposes of the PFIA. Without direct judicial precedent, a Texas court could look to the Fifth Circuit's recent *Smith* case and its use of IRS Ruling 89-49 factors to consider the question. *See Smith*, 827 F.3d at 417–18. Because of the private ownership, private management, and private capitalization of an FHLB, only two factors weigh in favor of a determination that an FHLB is an agency or instrumentality of the United States. A Texas court utilizing these factors would have a basis to determine that an FHLB is not an agency or instrumentality of the United States and thus is not within the scope of subsection 2256.009(a)(1).[3]

---

[3]The federal statute governing FHLBs expressly disclaims the full faith and credit guarantee of the United States in regard to FHLB obligations. *See* 12 U.S.C. § 1435. Despite this language, some in the industry argue that an obligation of an FHLB may be at least implicitly guaranteed as an obligation of the United States. *See generally* David Reiss, *The Federal Government's Implied Guarantee of Fannie Mae and Freddie Mac's Obligations: Uncle Sam Will Pick Up the Tab*, 42 GA. L. REV. 1019, 1042–43, 1069 (2008) (discussing the implied guarantee of government-sponsored entities, including FHLBs), Mark J. Flannery and W. Scott Frame, *The Federal Home Loan Bank System: The "Other" Housing GSE*, ECONOMIC REVIEW, Third Quarter 2006, at 33, 36. Nonetheless, the plain language of section 1435 refers to only the United States and not to its agencies or

*Cf. Mendrala v. Crown Mortg. Co.*, 955 F.2d 1132, 1136–38 (7th Cir. 1992) (determining that the Federal Home Loan Mortgage Corporation was not an agency or instrumentality of the United States after considering a five-factor test similar to that used in IRS Ruling 89-49).

Some evidence suggests that the Legislature amended subsection 2256.009(a)(1) to expressly include the language "letters of credit" to make clear its intent that the subsection included "a letter of credit from a Federal Home Loan Bank to serve as collateral for deposit of public funds." HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. H.B. 2957, 77th Leg., R.S. (2001). Though such a statement provides some insight into the Legislature's intent, we hesitate to rely heavily on this statement to determine whether an FHLB is an "agency or instrumentality" under the PFIA because the House Research Organization's Bill Analysis is "not an official part of the legislative process nor an official expression of the views of the Texas House of Representatives." HOUSE RESEARCH ORG., *About the HRO, available at* http://www.hro.house.state.tx.us (last visited Oct. 26, 2016). Moreover, the fact that an FHLB letter of credit may be an "eligible security" under the PFCA is not clear evidence that the Legislature contemplated an FHLB to be an agency or instrumentality of the United States for purposes of the PFIA. *See* TEX. GOV'T CODE § 2257.002(4)(F).

Given the lack of key jurisprudence, we cannot predict whether a Texas court would determine as a matter of law that an FHLB is an agency or instrumentality of the United States for purposes of the PFIA. Thus, we cannot advise you that this proposed transaction complies with the PFIA or the PFCA.

In your third question you ask whether the Authority would

> be fully in compliance with the requirements of the PFIA and the PFCA if it placed $10,000,000 of its funds in a certificate of deposit issued by a depository institution that has its main office or branch office in Texas and is backed by a letter of credit from an agency or instrumentality of the United States, other than [an FHLB], in an amount securing the full deposit and any accrued interest[.]

Request Letter at 8. Besides location, you do not provide us any information about the type of depository institution at issue here, other than it is not an FHLB. You tell us only that the depository institution is an agency or instrumentality of the United States, mirroring the language of the statute. *See* Request Letter at 8–9. To the extent the depository institution about which you ask is factually such an agency or instrumentality and is not limited by any governing statute in guaranteeing its obligations in a manner similar to section 1435, title 12, to the United States Code, a court would likely determine that a certificate of deposit investment secured by a letter of credit

---

instrumentalities. *Cf.* 12 U.S.C. § 2279aa-12(a)(2) (expressly disclaiming full faith and credit of certain obligations of "the United States, or any other agency or instrumentality of the United States"). In the event a court were to determine an FHLB is an agency or instrumentality of the United States, absent express reference to agencies or instrumentalities of the United States, this provision might not limit the authority of an agency or instrumentality to guarantee its own obligations.

from such entity comports with the statute. Absent more information about the institution, however, we cannot advise you about the legality of this proposed transaction under the PFIA or the PFCA.

You next question whether the Authority would

> be fully in compliance with the requirements of the PFIA and PFCA if it placed $10,000,000 of its funds in a certificate of deposit issued by a depository institution that does not have a main or office branch in Texas and is backed by a letter of credit from an agency or instrumentality of the United States in an amount securing the full deposit amount and any accrued interest[.]

Request Letter at 9. Because you inquire about a certificate of deposit, we consider section 2256.010, which is specific to certificate of deposits. "A certificate of deposit or share certificate is an authorized investment under this subchapter if the certificate is issued by a depository institution that has its main office or a branch office in this state and is" guaranteed as provided by subsection 2256.010(a)(1)–(3). TEX. GOV'T CODE § 2256.010(a)(1)–(3). As the investment you describe is not with a depository institution with a main or branch office in Texas, it does not satisfy the plain language of the first component under section 2256.010.[4] Without this first component, the analysis does not even reach the question of whether the guaranty or security is sufficient under subsection 2256.009(a)(4). Thus, a court would likely determine that this transaction does not comply with the PFIA. As such, we do not consider issues under the PFCA.

Your final question is whether the Authority would be

> fully in compliance with the PFIA and the PFCA if it made a $500,000 money market deposit backed by another obligation listed in Section 2256.009(a), such as [an FHLB] letter of credit, to the extent the amount of the deposit and any accrued interest exceed the maximum amount of FDIC insurance[.]

Request Letter at 10. In GA-0834, this office determined that a demand deposit account could be deemed to be an "other obligation" for purposes of subsection 2256.009(a)(4). *See* Tex. Att'y Gen. Op. No. GA-0834 (2011) at 1. The transaction at issue in Opinion GA-0834 involved an amount within the insurance limit of the FDIC. The issue here is whether a deposit of public funds in an amount over the federally insured amount of $250,000 can be an investment under subsection 2256.009(a)(4) where the excess amount is "backed by another authorized entity or obligation of such entity" in subsection 2256.009(a)(4). Request Letter at 10.

In addition to "obligations that are fully guaranteed or insured by the [FDIC]," subsection 2256.009(a)(4) includes "other obligations, the principal and interest of which are unconditionally guaranteed or insured by, or backed by the full faith and credit of, this state or the United States or

---

[4]Because we conclude that it does not meet the first component, we do not address whether it meets the second.

their respective agencies and instrumentalities." TEX. GOV'T CODE § 2256.009(a)(4). The PFCA sets the amount of the required "total value of eligible security." *Id.* § 2257.022(a). It does not expressly require the collateral amount to be held in a singular type of security. Thus, a court would likely agree that amounts in excess of the FDIC minimum insurance could be secured or collateralized by other eligible securities. But again, without more factual information about the other entities or obligations about which you ask, we cannot determine whether this transaction complies with the PFIA. If, factually, the security is in a sufficient amount for the excess, and is fully guaranteed by the United States or its agencies or instrumentalities, and does not otherwise have a limitation akin to section 1432, title 12, to the United States Code, it is consistent with the language of subsection 2256.009(a)(4).

## S U M M A R Y

Consistent with Texas Attorney General Opinion GA-0834 (2011), a court could conclude that a time deposit account fully insured by the Federal Deposit Insurance Corporation is within the scope of an "other obligation" under Government Code subsection 2256.009(a)(4).

Given the varied state of the relevant jurisprudence, we cannot predict whether a Texas court would determine as a matter of law that a federal home loan bank is an agency or instrumentality of the United States within the scope of Government Code subsection 2256.009(a)(1).

To the extent a depository institution is an agency or instrumentality of the United States and is not otherwise limited by any governing statute in guaranteeing its obligations in a manner similar to section 1435, title 12, United States Code, a court would likely determine that a certificate of deposit investment secured by a letter of credit from such entity comports with subsection 2256.009(a)(1) of the Government Code.

Under Government Code subsection 2256.010(a)(1)–(3), a deposit of funds in a certificate of deposit must be to a depository institution that has its main office or a branch office in this State.

A court would likely conclude that a money market deposit, in an amount exceeding the amount of FDIC insurance could be secured by another obligation in Government Code subsection 2256.009(a)(4).

Very truly yours,

*Ken Paxton*

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

CHARLOTTE M. HARPER
Assistant Attorney General, Opinion Committee