# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 28, 2016

No. 15-31001

Lyle W. Cayce
Clerk

MARY SMITH; PAMELA BAGNERIS BATISTE; ROBERT BOOKMAN; KENNETH BOURGEOIS; JAMES BROWN, JR.,

        Plaintiffs - Appellants

v.

REGIONAL TRANSIT AUTHORITY; TRANSIT MANAGEMENT OF SOUTHEAST LOUISIANA, INCORPORATED,

        Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before REAVLEY, HAYNES, and HIGGINSON, Circuit Judges.

HAYNES, Circuit Judge:

The Plaintiffs-Appellants appeal the district court's grant of summary judgment in favor of Defendants-Appellees. The principal question on appeal is whether the plan at issue is exempt from the Employee Retirement Income Security Act of 1974 as a "governmental plan." Plaintiffs also challenge the dismissal of their successor liability and 42 U.S.C. § 1983 claims, and contend that the district court erred in not granting their motion for additional discovery. For the following reasons, we AFFIRM.

No. 15-31001

## I. Background

Mary Smith and approximately forty other individuals (collectively, "Plaintiffs") are former employees of New Orleans Public Service, Inc. ("NOPSI") who retired from Transit Management of Southeast Louisiana ("TMSEL") and participated in TMSEL's retiree welfare benefit plan (the "Plan"). They brought claims against Defendants Regional Transit Authority ("RTA"), TMSEL, and their insurers under the Employee Retirement Income Security Act of 1974 ("ERISA"), and the district court dismissed the case for lack of jurisdiction. According to the district court, the plan was exempt from ERISA as a "governmental plan," and the court lacked subject matter jurisdiction. On appeal, a panel of this court vacated and remanded, noting that:

> because a federal district court has jurisdiction to decide whether or not a plan is an ERISA plan as claimed by the plaintiff in the complaint, we conclude that, under Supreme Court precedent and [*ACS Recovery Services, Inc. v. Griffin*, 723 F.3d 518 (5th Cir. 2013)], the proper procedural vehicle to raise the question of whether a purported ERISA plan is a "governmental plan" is either Rule 12(b)(6) or, if factual information outside the pleadings is needed, Rule 56 (if factual issues cannot be resolved then, of course, a trial may be needed).

*Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 346–47 (5th Cir. 2014).

After remand to the district court, Plaintiffs amended their complaint to add a claim for successor liability against the RTA, claims under 42 U.S.C. § 1983, and various state law causes of action. Defendants filed a motion for summary judgment. In response, Plaintiffs filed a motion to conduct discovery and compel under Rule 56(d) of the Federal Rules of Civil Procedure. The district court granted the Rule 56(d) motion in part, "limiting the time frame and scope of any discovery to be taken to that which is relevant and necessary

2

to clarify the ownership, funding, and management of [TMSEL]," and referred these discovery issues to the magistrate judge. The magistrate judge then entered an order pursuant to an agreement between the parties to confine discovery to agreed-upon documents and limit its temporal scope to the year 2006.

The facts underlying this dispute are as follows. "Prior to 1983, the New Orleans transit system was operated by [NOPSI], a private company. In the late 1970s and early 1980s, the system converted to a publicly held system, owned by [the RTA] and operated by [TMSEL]." *Smith*, 756 F.3d at 342. The RTA was created by statute in August 1979 as "a body politic and corporate and a political subdivision of the state of Louisiana comprising all of the territory in the parishes of Jefferson, Orleans, St. Bernard, and St. Tammany." LA. REV. STAT. ANN. § 48:1654(A). The RTA's purpose is "to plan, design, . . . maintain, and administer a transit system within the metropolitan area to operate same or contract therefor, lease as lessor same for operation by private parties." *Id.* § 48:1654(B). The RTA is authorized by statute to contract with private entities to operate, maintain, and administer the transit system. *Id.* § 48:1656(4).

TMSEL was incorporated in 1982. The Board of Directors manages the business of TMSEL, and the members of the Board are elected by the shareholders. From its creation until 2012, TMSEL was owned by a series of private entities.

In June 1983, the RTA purchased the New Orleans public transit system from NOPSI. At the time of purchase, NOPSI and the City of New Orleans had an existing 13(c) agreement, which provided for "fair and equitable arrangements" for employee benefits. In accordance with the purchase of the transit system, the RTA, TMSEL, NOPSI, and the City of New Orleans entered into an Employee and Retiree Pension and Welfare Benefit Agreement

("Benefits Agreement"), which set forth the RTA and TMSEL's obligations regarding NOPSI's benefit plans. Under the Agreement, the RTA and TMSEL "shall provide or cause to be provided . . . the same coverages and levels of benefits." By separate letter, TMSEL and RTA also "agreed to assume, entirely, the rights, duties, and responsibilities contained in . . . [the] §13(c) Agreement."

The general relationship between the RTA and TMSEL is discussed in the 2001 Management Services Agreement ("MSA"). As set forth in the MSA, TMSEL was (at that time) wholly owned by Metro New Orleans Transit, Inc. ("Metro"), which was "engaged in the business of providing management and advisory services for the operation of transit systems," and TMSEL was "engaged in the business of providing personnel necessary for the operation of the [RTA's transit system]." Under the agreement, Metro would utilize TMSEL to manage the RTA transit system. Defendants entered evidence that TMSEL provided the day-to-day operations of the transit system. For example, TMSEL provided bus operators, mechanics, and other support personnel.

The MSA also provided that the RTA had the authority to remove the General Manager and Deputy General Manager of TMSEL if these individuals did not perform their job responsibilities in a manner acceptable to the RTA. It also specified that "[a]ny document, report or data generated by TMSEL related to and/or in connection with this Agreement shall be the sole property of the RTA." Defendants presented evidence that the RTA has the right to inspect and audit TMSEL's books and records and that TMSEL was funded solely by the RTA. In fact, the MSA provides that the RTA was responsible for providing TMSEL with the funds needed to operate and manage the transit system, which included the payment of wages and benefits, and that all revenue from operating the transit system was the property of the RTA, which retained authority to direct how the funds were to be treated. In 2012, the

No. 15-31001

RTA obtained 100% ownership of TMSEL.

At the conclusion of discovery, Defendants filed another motion for summary judgment. The district court granted summary judgment on the federal claims and, declining to exercise supplemental jurisdiction, dismissed the state law claims without prejudice. Plaintiffs timely appealed.

## II. Standard of Review

We review a grant of summary judgment de novo, applying the same standard that the district court applied. *United States v. Lawrence*, 276 F.3d 193, 195 (5th Cir. 2001). Summary judgment is proper where there is no genuine dispute of material fact, and a party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "[We] must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment[, but a] party opposing summary judgment may not rest on mere conclusory allegations or denials in its pleadings." *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995) (citations omitted). We can affirm the district court's grant of summary judgment on any ground supported by the record. *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014). We review a denial of a Rule 56(d) motion for discovery for an abuse of discretion. *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534 (5th Cir. 1999).

## III. Discussion

*A. Governmental Plan*

Plaintiffs brought claims under ERISA for improper denial of benefits, 29 U.S.C. § 1132(a)(1)(B), and breach of fiduciary duty, *id.* § 1132(a)(2). Governmental plans are excluded from ERISA's framework. *Id.* § 1003(b)(1). ERISA defines a governmental plan as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality

5

of any of the foregoing." *Id.* § 1002(32). The district court determined that the RTA was a political subdivision of Louisiana and that TMSEL was an agency or instrumentality of the RTA. According to the district court, because the Plan was maintained by an agency or instrumentality of a political subdivision of Louisiana, it was a governmental plan and exempt from ERISA, so Plaintiffs could not prevail under ERISA as a matter of law. We agree.

The RTA is a political subdivision of Louisiana. Plaintiffs all but conceded this point at oral argument; and we address it briefly. We agree with the district court that the proper test to determine whether an entity is a political subdivision comes from *National Labor Relations Board v. National Gas Utility District of Hawkins County*, 402 U.S. 600 (1971). Political subdivisions are "entities that are either (1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate." *Hawkins Cty.*, 402 U.S. at 604–05. As the district court determined, the RTA is a political subdivision under either prong of this disjunctive test. LA. REV. STAT. ANN. §§ 48:1654(A), :1655.

We next address whether TMSEL is an agency or instrumentality of the RTA. The statute does not define "agency or instrumentality," and the parties disagree about what test to apply. Plaintiffs propose that we adopt the test set forth in *Alley v. Resolution Trust Corp.*, under which the court examines "the nature of an entity's relationship to and governance of its employees" (the "*Alley* test"). 984 F.2d 1201, 1205 n.11 (D.C. Cir. 1993). Although the D.C. Circuit cautioned that this "employment relationship" test might not be appropriate where state entities are at issue, *id.*, the Tenth Circuit has applied the *Alley* test in such a scenario, *see McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1257–58 (10th Cir. 1998). Plaintiffs argue that since they were treated as private employees, application of the *Alley* test would result in a

No. 15-31001

conclusion that the plan was not "governmental."

By contrast, Defendants maintain that the proper test is the six-factor test provided in Internal Revenue Service Revenue Ruling 57-128 ("Revenue Ruling 57-128"), and which was applied in *Rose v. Long Island Railroad Pension Plan*, 828 F.2d 910, 917–18 (2d Cir. 1987). Revenue Ruling 57-128 set forth the following factors that the IRS considers to determine whether an entity is an agency or instrumentality for the purposes of the Federal Insurance Contributions Act and the Federal Unemployment Tax Act:

> (1) whether it is used for a governmental purpose and performs a governmental function; (2) whether performance of its function is on behalf of one or more states or political subdivisions; (3) whether there are any private interests involved, or whether the states or political subdivisions involved have the powers and interests of an owner; (4) whether control and supervision of the organization is vested in public authority or authorities; (5) if express or implied statutory or other authority is necessary for the creation and/or use of such an instrumentality, and whether such authority exists; and (6) the degree of financial autonomy and the source of its operating expenses.

Rev. Rul. 57-128, 1957-1 C.B. 311.

In *Rose,* the Second Circuit noted that the IRS also used Revenue Ruling 57-128 to make determinations of agency-or-instrumentality status under 26 U.S.C. § 414(d), which "was added to the Internal Revenue Code by Title II of ERISA and defines those 'governmental plans' which are exempt from certain qualification requirements for favorable tax treatment." 828 F.2d at 917. Because "[t]he definition of 'governmental plan' in § 414(d) is virtually identical to the definition in 29 U.S.C. § 1002(32)" and the IRS interpretations of the statute are entitled to deference, the court adopted the Revenue Ruling 57-128 as the basis for determining that the Long Island Railroad was an agency or

No. 15-31001

instrumentality of the Metropolitan Transportation Authority. *Id.* at 917–18.

In this case, the district court also applied Revenue Ruling 57-128 to determine that TMSEL is an agency or instrumentality of the RTA. Examining those factors, the first factor—whether TMSEL is used for a governmental purpose and performs a governmental function—leans heavily in favor of Defendants. TMSEL's purpose was to manage the public transit system in furtherance of the RTA's mission to provide public transportation. *See Rose*, 828 F.2d at 918 (managing commuter transportation satisfied first factor).

The second factor—whether performance of its function is on behalf of one or more states or political subdivisions—also leans in Defendants' favor. TMSEL performed its function on behalf of the RTA.

The third factor—whether there are any private interests involved, or whether the states or political subdivisions involved have the powers and interests of an owner—leans in favor of Plaintiffs. TMSEL was a private company owned by private parent companies up until the RTA acquired ownership in 2012. Notably, however, TMSEL's status as a private company alone does not necessitate a finding that it is not an agency or instrumentality. *See Wilcox v. Terrytown Fifth Dist. Volunteer Fire Dep't, Inc.*, 897 F.2d 765, 766–68 (5th Cir. 1990) (holding that a volunteer fire department, which was a nonprofit corporation, was an agency of a political subdivision for the purposes of the FLSA).

The fourth factor—whether control and supervision of the organization is vested in public authority or authorities—weighs heavily in favor of Defendants. The district court's opinion sets forth a long list of all the ways that the RTA exercised control under the MSA. By way of example, under the MSA, the RTA had the authority to remove the General Manager and Deputy General Manager of TMSEL. The MSA also specified that "[a]ny document,

No. 15-31001

report or data generated by TMSEL related to and/or in connection with this Agreement shall be the sole property of the RTA."

The fifth factor—if express or implied statutory or other authority is necessary for the creation and/or use of such an instrumentality, and whether such authority exists—also weighs in favor of Defendants. The RTA is vested with statutory authority to use TMSEL. *See* LA. REV. STAT. ANN. § 48:1656(4).

The sixth factor—the degree of financial autonomy and the source of its operating expenses—again weighs in favor of Defendants. Defendant submitted extensive evidence that TMSEL was funded exclusively by the RTA. *See Rose*, 828 F.2d at 918 (sixth factor met where agency or instrumentality was "heavily dependent on state subsidies to meet its operating expenses").[1]

The district court also noted that the IRS has since refined these factors in IRS Revenue Ruling 89-49 ("Revenue Ruling 89-49"), which directly applies to 26 U.S.C. § 414(d). It determined that under Revenue Ruling 89-49, the analysis of whether TMSEL is an agency or instrumentality of the RTA does not change. Under Revenue Ruling 89-49,

> One of the most important factors to be considered in determining whether an organization is an agency or instrumentality of the United States or any state or political subdivision is the degree of control that the federal or state government has over the organization's everyday operations. Other factors include: (1) whether there is specific legislation creating the organization; (2) the source of funds for the organization; (3) the manner in which the organization's trustees or operating board are selected; and (4) whether the applicable governmental unit considers the employees of the organization to be employees of the applicable governmental unit. Although all of the above factors are considered in

---

[1] Plaintiffs' reliance on the funding for the Plan misses the mark because this factor focuses on the source of the funding for the entity, not the funding for the plan.

9

No. 15-31001

> determining whether an organization is an agency of a government, the mere satisfaction of one or all of the factors is not necessarily determinative.

Rev. Rul. 89-49, 1989-1 C.B. 117. The most notable difference between Revenue Ruling 89-49 and Revenue Ruling 57-128 for our purposes is that Revenue Ruling 89-49 asks if the governmental entity treats the employees of the organization as public employees. *See Berini v. Fed. Reserve Bank of St. Louis, Eighth Dist.*, 420 F. Supp. 2d 1021, 1028 (E.D. Mo. 2005). Revenue Ruling 89-49 thus incorporates the concern expressed by *Alley*—the employment relationship—but does not make it dispositive or even predominant.[2] It thereby addresses the concerns espoused by Plaintiffs in this case—that they were treated as private employees and not entitled to benefits afforded to public employees.

We conclude that the Revenue Ruling test, as refined by Revenue Ruling 89-49, strikes the appropriate balancing among concerns in determining whether a plan is a governmental plan. We agree with the district court that the Revenue Ruling 57-128 factors overall weigh in favor of Defendants. We also agree with the district court that even accounting for the additional factor under Revenue Ruling 89-49, which weighs in favor of the plaintiff, in light of the remaining factors (and the heightened focus on the degree of control), TMSEL is an agency or instrumentality of the RTA.[3]

---

[2] *See Christman v. Coresource, Inc.*, No. 2:14-CV-1913, 2015 WL 10791973, at *5 (S.D. Ohio Aug. 26, 2015) ("The IRS test cited by both parties formerly had six factors, but the factors have been updated since they were originally set forth in 1957. Essentially, there are now five factors[.]" (internal citations omitted)); *Milby v. Liberty Life Assurance Co. of Bos.*, 102 F. Supp. 3d 922, 933 (W.D. Ky. 2015) ("The factors outlined in Revenue Ruling 57–128 and Revenue Ruling 89–49 are quite similar and compel the same result here. For the sake of efficiency, the Court will focus its discussion on the factors more recently articulated by the IRS in Revenue Ruling 89–49.").

[3] This determination is reinforced by a series of Private Letter Rulings addressing mass transit systems in similar factual circumstances. *See* IRS Priv. Ltr. Rul. 9541040 (Oct.

No. 15-31001

Plaintiffs' estoppel argument is unpersuasive.  They argue that TMSEL previously asserted that the plan was an ERISA plan.  However, we have previously noted that whether an entity intended ERISA to govern is not relevant; rather "ERISA protection and coverage turns on whether the [plan] satisfies the statutory definition." *Meredith v. Time Ins. Co.*, 980 F.2d 352, 354 (5th Cir. 1993) (citation omitted); *see also MDPhysicians & Assocs., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 183 n.7 (5th Cir. 1992) (noting the statutory definition controls, even though the plan at issue was "painstakingly drafted" to comply with ERISA and the relevant "documents and agreements . . . all stated that ERISA controlled the terms of the particular document").[4]

For these reasons, we hold that the Plan was a governmental plan and thus exempt from ERISA.  Accordingly, the district court did not err by granting summary judgment in favor of Defendants on Plaintiffs' ERISA claims.  This conclusion also disposes of the successor liability claim because successor liability is predicated on the existence of underlying liability.  *See Golden State Bottling Co., Inc. v. NLRB*, 414 U.S. 168, 182 n.5 (1973) ("[T]he general rule of corporate liability is that, when a corporation sells all of its assets to another, the latter is not responsible for *the seller's debts or liabilities*, except [under certain enumerated circumstances.]" (emphasis added)).

---

13, 1995); IRS Priv. Ltr. Rul. 9710029 (Mar. 7, 1997); IRS Priv. Ltr. Rul. 9420039 (May 20, 1994).  While IRS private letter rulings are not binding with respect to parties other than the taxpayer to whom they were issued, "such rulings do reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws." *Hanover Bank v. C.I.R.*, 369 U.S. 672, 686 (1962).

[4] We need not decide whether the "governmental plan" exception must be negated as part of Plaintiffs' case or instead is an affirmative defense that must be proven by the defendant because it makes no difference here.   Where a party seeks summary judgment pursuant to an affirmative defense, the movant must establish beyond peradventure the elements of the defense. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial. *Ferguson v. FDIC*, 164 F.3d 894, 897 (5th Cir. 1999).  Here, Defendants entered evidence in support of their contention that the Plan was not covered by ERISA, and Plaintiffs failed to present evidence to create a genuine dispute of material fact on this point.

No. 15-31001

Accordingly, the district court did not err in granting summary judgment as to the successor liability claims against the RTA.[5]  We express no opinion as to whether successor liability applies to ERISA violations by predecessor entities.

*B. Section 1983*

Plaintiffs' Section 1983 claims are barred by the statute of limitations. The statute of limitations for Section 1983 claims is "the forum state's personal-injury limitations period," which in Louisiana is one year.  *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998).[6]  "In applying the forum state's statute of limitations, the federal court should also give effect to any applicable tolling provisions."  *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993). However, federal law governs when a Section 1983 claim accrues.  *Jacobsen*, 133 F.3d at 319.  This court has stated that "[u]nder federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *Gartrell*, 981 F.2d at 257.  As a result, the limitations period begins "when the plaintiff is in possession of the 'critical

---

[5] Plaintiffs maintain that there is underlying liability for the breach of fiduciary duty claim under ERISA because these claims arose before 2006, and the district court did not address the governmental status of the plan prior to 2006.  Not only did Plaintiffs apparently agree to limit the scope of discovery to 2006, but also they do not explain what evidence would change the governmental plan analysis during any pre-2006 period.  In fact, much of the evidence relied upon in the district court and here precedes 2006, and Defendants entered evidence that the MSA reflected the relationship between the RTA and TMSEL since 1983. Accordingly, we reject this argument.

[6] The "borrowed" state statute is applied where there is no federal statute of limitations.  *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).  The catchall four-year federal statute of limitations applies "for actions arising under federal statutes enacted after December 1, 1990."  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004).  "[I]f the plaintiff's claim against the defendant was made possible by a post–1990 enactment," the four-year statute of limitations applies.  *Id.* at 382.  Here, Plaintiffs' claims were not "made possible" by a post-1990 federal statute.  The only post-1990 amendment to Section 1983 merely limited claims against judicial officers.  *See Campbell v. Forest Pres. Dist. of Cook Cty., Ill.*, 752 F.3d 665, 668 (7th Cir. 2014).  As such, we have previously concluded that the catchall statute of limitations does not apply to Section 1983.  *Garrett v. Thaler*, 560 F. App'x 375, 383 (5th Cir. 2014) (citing *Walker v. Epps*, 550 F.3d 407, 411 (5th Cir. 2008)).

facts that he has been hurt and who has inflicted the injury.'" *Id.* (quoting *Lavellee v. Listi*, 611 F.2d 1129, 1130 (5th Cir. 1980)).

The critical inquiry for accrual is when Plaintiffs knew or had reason to know of the denial of their benefits. *See id.* Plaintiffs were informed of the changes in the Plan and resulting denial of benefits in a letter from the RTA and TMSEL in March 2006. This letter sufficiently provided Plaintiffs knowledge of the injury upon which this action is based, as it stated that "financial resources are not sufficient to . . . continue some benefits for retirees." Therefore, Plaintiffs' Section 1983 cause of action accrued upon receipt of the letter dated March 6, 2006.

We agree with the district court that Plaintiffs' arguments that the claims are not time barred are unpersuasive. First, the changes in the Plan constitute a single violation and the continuing violation theory does not apply. *See McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 867 (5th Cir. 1993) ("We must be careful not to confuse continuous violations with a single violation followed by continuing consequences . . . .").[7]

Second, the doctrine of *contra non valentem* does not apply. Under this doctrine, "prescription does not run against a party who is unable to act." *Corsey v. State*, 375 So. 2d 1319, 1321 (La. 1979). Plaintiffs appear to rely on

---

[7] For the first time at oral argument, counsel for Plaintiffs argued that they have a "new cause of action" under Section 1983 that accrued in January 2012—when rates were again raised. We do not address what effect, if any, this rate hike has on the statute of limitations, as Plaintiffs have waived this argument. *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." (citation omitted)); *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 140 (5th Cir. 2016) (determining that a "passing reference to [an] argument in the fact section of his summary judgment response . . . was insufficient to give the district court an opportunity to rule on the argument, and it [was] therefore waived"); *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) (noting that arguments not made in the body of appellant's brief are abandoned); *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 270 (5th Cir. 1998) ("[W]e do not generally consider points raised for the first time at oral argument.").

No. 15-31001

the third category under *contra non valentem*, which applies "where the [defendant] himself has done some act effectually to prevent the [plaintiff] from availing himself of his cause of action." *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 245 (La. 2010). Plaintiffs state they were led to believe that the changes to the Plan were only temporary due to the post-Katrina situation based on the following language in the 2006 letter: "Please be assured that we are doing everything in our power to acquire resources, to rebuild, to restore systems and services and to reemploy as many people displaced by this disaster as possible. We will not ease-up on this journey." Even if Plaintiffs were led astray by this statement (and it was reasonable to delay action for six years), Plaintiffs have provided no evidence that Defendants included it deliberately to preclude them from filing suit.[8]

*C. Discovery Dispute*

Plaintiffs contend that the district court improperly limited the scope of discovery in its ruling on the Rule 56(d) motion to compel. Rule 56(d) allows the district court to provide additional time for discovery before ruling on a motion if the nonmovant shows an inability to support its opposition factually. FED. R. CIV. P. 56(d). While "Rule 56(d) motions for additional discovery are broadly favored and should be liberally granted," *Am. Family Life Assurance Co. v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (citation omitted), the party filing the motion must demonstrate "how additional discovery will create a genuine issue of material fact." *Canady v. Bossier Par. Sch. Bd.*, 240 F.3d 437, 445 (5th

---

[8] To the extent Plaintiffs rely on the fourth category of *contra non valentem*, which applies "where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant," *Marin*, 48 So. 3d at 245, the outcome is no different. The Louisiana Supreme Court has determined that the fourth category does not apply where the only contention is that the Defendants failed to inform the Plaintiffs that a condition was permanent. *See Fontenot v. ABC Ins. Co.*, 674 So. 2d 960, 964 (La. 1996). Plaintiffs offer no other explanation as to why they did not know of their cause of action.

14

Cir. 2001) (citation omitted).  More specifically, "the non-moving party must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'"  *Biles*, 714 F.3d at 894 (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)).  "The nonmovant may not simply rely on vague assertions that discovery will produce needed, but unspecified, facts." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990).

In evaluating district courts' rulings on Rule 56(d) motions, we generally assesses whether the evidence requested would affect the outcome of a summary judgment motion.  *Biles*, 714 F.3d at 895.  This court has found an abuse of discretion where it can identify a specific piece of evidence that would likely create a material fact issue.  *E.g.*, *Hinojosa v. Johnson*, 277 F. App'x 370, 378 (5th Cir. 2008).  In contrast, this court has found no abuse of discretion where the party filing the Rule 56(d) motion has failed to identify sufficiently specific or material evidence to affect a summary judgment ruling.  *Prospect Capital Corp. v. Mut. of Omaha Bank*, 819 F.3d 754, 757–58 (5th Cir. 2016). The items Plaintiffs claim they were denied fall in the latter category. Accordingly, the Plaintiffs have failed to demonstrate that the district court abused its discretion in denying their Rule 56(d) motion.

For these reasons, the judgment of the district court is AFFIRMED.