# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-10634

United States Court of Appeals
Fifth Circuit

**FILED**
July 18, 2017

Lyle W. Cayce
Clerk

JOEL THOMASON,

　　　　Plaintiff – Appellee,

v.

METROPOLITAN LIFE INSURANCE COMPANY; VERIZON EMPLOYEE BENEFITS COMMITTEE,

　　　　Defendants – Appellants.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:14-CV-86

Before REAVLEY, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:*

　　This case arises from a dispute between a claims administrator and a beneficiary about whether the beneficiary "elected to receive" pension benefits under ERISA when he moved them via direct rollover from his pension fund to his IRA. The district court determined that the plan beneficiary was entitled to summary judgment on his § 1132(a)(1)(B) claim. Because the district court

---

　　* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-10634

correctly applied *Koehler v. Aetna Health Inc.*, 683 F.3d 182 (5th Cir. 2012), we AFFIRM the judgment of the district court.

I.

Plaintiff-Appellee Joel Thomason worked for Verizon Communications, Inc. and participated in two relevant employee benefits programs: a plan for long-term disability benefits ("the Plan"), and the Verizon Management Pension Plan ("the Pension Plan").[1] The Metropolitan Life Insurance Company ("MetLife") was the claims administrator and has discretionary authority to adjudicate long-term disability claims and interpret the Plan. The Summary Plan Description explains the Plan and has been expressly incorporated into the Plan by reference. The Summary Plan Description explains that certain benefits offset the long-term disability benefit amount, including "[p]ension benefits from a Verizon pension plan, if [the beneficiary] elect[s] to receive them." Doc. 76 at 39.[2]

In December 2007, Thomason experienced various health issues that made him eligible to begin receiving long-term disability benefit payments. ROA.1474. After reviewing the Summary Plan Description, IRS regulations, and various other documents, Thomason took all of his pension benefits in a lump sum, as allowed under the Pension Plan. ROA.1250–52. He determined that performing a trustee-to-trustee direct rollover from his pension account to his IRA would be his most advantageous financial decision. *Id.*; Red br. at 9.

---

[1] For both plans, Verizon Communications, Inc. is the plan sponsor, while the Verizon Employee Benefits Committee is the plan administrator. For simplicity, we refer simply to "Verizon," rather than distinguishing between its various internal branches. ROA.746; ROA 863.

[2] The relevant portion of the summary plan description reads:
Your LTD plan benefit is reduced by benefits provided from
these sources:
・Pension benefits from a Verizon pension plan, if you elect to
receive them.
ROA.737.

2

## No. 16-10634

He concluded that his pension plan was qualified under section 401(a) of the Internal Revenue Code and subject to IRS regulations, including IRS Publication 575. IRS Publication 575 explains that if funds are withdrawn from a qualified retirement plan and paid directly, i.e., rolled over, to a traditional IRA, then tax penalties may be deferred and the funds are not considered income until received as a distribution that was not rolled over. Therefore, Thomason concluded that the offset provision of the Plan would not apply to the direct rollover of funds because he would not receive his pension benefits until he withdrew them from his IRA. *See* Red Br. at 9–10; ROA.944.

MetLife, however, offset Thomas's monthly long-term disability benefits because it determined he had "elected to receive" "pension benefits from a Verizon pension plan." As a result, Thomason began receiving only $1,251.96 of his $2,571.79 monthly long-term disability benefits payment. ROA.27 ¶ 33; ROA.72 ¶ 33. Thomason argues that because he chose a trustee-to-trustee transfer (pension trust to IRA), he did not "elect to receive" the funds, so the offset provision should not apply. *E.g.*, Red br.38.

After two administrative appeals, (ROA.909–23; ROA.1017–35) in which MetLife upheld the offset determination, (ROA.72 ¶ 35; ROA.1017–36) Thomason sued Verizon and MetLife under 29 U.S.C. §§ 1132(a)(1)(B), (a)(3), and (c).[3] He moved for summary judgment on his (a)(1)(B) and (c) claims, while

---

[3] 29 U.S.C. § 1132 reads as follows:
(a) Persons empowered to bring a civil action
A civil action may be brought—
 (1) by a participant or beneficiary
. . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; . . .
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

No. 16-10634

MetLife moved for summary judgment on the (a)(1)(B) and (a)(3) claims. The district court granted summary judgment to Thomason on his § 1132(a)(1)(B) claim, and *sua sponte* granted him summary judgment on his § 1132(a)(3) claim.[4]

## II.

Our review of a district court's grant of summary judgment is *de novo*, viewing "all facts and evidence in the light most favorable to the non-moving party." *Amerisure Mut. Ins. Co. v. Arch Specialty Ins. Co.*, 784 F.3d 270, 273 (5th Cir. 2015); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Because the Plan gives MetLife discretion to interpret the Plan's terms, we review MetLife's interpretation for abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

## III.

This case turns on whether the Summary Plan Description is ambiguous. The parties contest the meaning of the Summary Plan Description's provision that long-term disability benefits "may be reduced by other sources of disability income," including "[p]ension benefits from a Verizon pension plan, *if [the beneficiary] elect[s] to receive them*." ROA.1186–87. Thomason argues that he did not elect to receive the pension benefits because he directly rolled his lump-sum pension payment into an IRA through a trustee-to-trustee transfer. MetLife disagrees, arguing that Thomason received the money when MetLife

---

§ 1132(c) governs an "[a]dministrator's refusal to supply requested information; penalty for failure to provide annual report in complete form." (emphasis omitted)

[4] The district court denied summary judgment on Thomason's § 1132(c) claim, which he does not appeal.  MetLife appeals the district court's grant of summary judgment in favor of Thomason's §§ 1132(a)(1)(B) and (a)(3) claims.

Because Thomason seeks the same relief on his § 1132(a)(3) claim as his § 1132(a)(1)(B) claim, and because we affirm the district court's grant of summary judgment on the (a)(1)(B) claim, we need not consider the district court's *sua sponte* grant of summary judgment on Thomason's (a)(3) claim.

4

No. 16-10634

took his pension benefits out of his pension account and delivered the lump-sum payment to his IRA.

## A.

We typically use a two-part test to review a plan administrator's decision to deny benefits, in which we determine first whether the administrator reached the legally correct interpretation of the plan, and if not, whether it abused its discretion. *Wildbur v. Arco Chem. Co.*, 974 F.2d 631, 637 (5th Cir. 1992). The analysis by which we determine if the claims administrator reached the legally correct interpretation varies depending on whether the plan itself or the summary plan description is at issue.[5]

When a summary plan description is at issue, we first look to see if the summary plan description is ambiguous. *See Koehler*, 683 F.3d at 188–89 (determining whether plan summary was ambiguous prior to interpreting plan language). As we described at length in *Koehler*, "[a]mbiguities in a plan summary are resolved in favor of the beneficiary"—even when the summary plan description is a verbatim copy of the plan. *Id.* at 188.[6] Although a plan may give a plan administrator discretion over the plan, that discretion does not extend to the summary plan description. *Id.*

This distinction stems from ERISA's statutory requirements for summary plan descriptions. "ERISA requires that plan summaries be 'written in a manner calculated to be understood by the average plan participant, and . . . sufficiently accurate and comprehensive to reasonably apprise such

---

[5] When the question involves a plan, rather than a summary plan description, we use the following three factors to determine the legally correct interpretation: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Wildbur*, 974 F.2d at 637–38.

[6] Courts use the terms "summary plan description" and "plan summary" interchangeably.

participants and beneficiaries of their rights and obligations under the plan.'" *Id.* (quoting 29 U.S.C. § 1022(a)). A summary plan description is ambiguous when "a reasonable plan participant could not read the summary plan description and know with any degree of certainty" which "conflicting inference[]" should control, and would have to refer to the actual policy for clarification. *Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 642 (5th Cir. 1999) *abrogated on other grounds by CIGNA Corp. v. Amara*, 563 U.S. 421 (2011). In such circumstances, we apply the rule of *contra proferentem*, which resolves ambiguities against the drafter. Therefore, the administrator's proposed interpretation will be deemed legally incorrect under the first part of our two-part inquiry. *See Koehler*, 683 F.3d at 188–89.

## B.

At issue here is the phrase "elect to receive," which appears in the Summary Plan Description. Because this language is ambiguous—MetLife argues that selecting a trustee-to-trustee transfer constitutes "electing to receive" pension benefits, while Thomason argues that such a transfer cannot be an election to receive the funds because he has no control over them—we interpret the provision *contra proferentem* and construe the language against MetLife and in favor of Thomason.

MetLife argues that the district court erred by ignoring MetLife's discretionary authority to interpret the Plan and thus incorrectly granted summary judgment to Thomason. MetLife emphasizes that the Plan incorporated the Summary Plan Description by reference, and argues that this means its discretion extends to the Summary Plan Description. But this is not the case. Indeed, in *Koehler*, where the plan and the summary plan description *were identical*, we still interpreted the summary plan description *contra proferentem*, because it was ambiguous and thus failed to meet the required standards for a summary plan description. *See Koehler*, 683 F.3d at 188–91

("Aetna's discretion to resolve ambiguities in the *plan* does not extend to the plan *summary*, notwithstanding that in this instance the summary is a verbatim copy of text in the plan."). As a result, merely incorporating the Summary Plan Description into the Plan by reference does not give MetLife discretion over the Summary Plan Description, and we construe any ambiguities that exist in the Summary Plan Description against MetLife. *Koehler*, 683 F.3d at 188–89.

MetLife argues that we should follow *Phillips v. Metropolitan Life Insurance Co.*, 405 S.W.3d 880, 898–905 (Tex. App.—Dallas, May 10, 2013), which determined that MetLife properly offset the long-term disability benefits of another Plan beneficiary. That court in effect determined that MetLife had the legally correct interpretation of "elect to receive" and then determined the phrase was not ambiguous and so the beneficiary was not entitled to *contra proferentem*, and could not prevail. *Id.* Although the facts are similar, we reject the reasoning of that court, which reverses the relevant inquiry. Under our precedent, the question is not whether the claims administrator or a court selected an appropriate definition of "elect to receive" that the beneficiary failed to correctly guess. The inquiry is whether the Summary Plan Description was "written in a manner calculated to be understood by the average plan participant," and "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." *Koehler*, 683 F.3d at 188 (quoting 29 U.S.C. § 1022(a)). Because "a reasonable plan participant could not read the summary plan description and know with any degree of certainty," which "conflicting inference[]" should control, and would have to refer to the actual policy for clarification, the Summary Plan Description is ambiguous. *Rhorer*, 181 F.3d at

No. 16-10634

642. As a result, we resolve the ambiguity "in favor of the beneficiary." *Koehler*, 683 F.3d at 188.[7]

In sum, the Summary Plan Description gave no indication of whether a direct rollover in a trustee-to-trustee transfer constituted a beneficiary "electing to receive" pension benefits from a Verizon pension plan. We do not reach the actual meaning of "elect to receive" under the Plan. Instead, we determine that the Summary Plan Description is ambiguous and thus we construe it in Thomason's favor. *See Koehler*, 683 F.3d at 188. Accordingly, we determine that Thomason had not elected to receive the funds when he directly rolled them over from the pension fund to his IRA through a trustee-to-trustee transfer.

IV.

We next turn to the second step of the two-part *Wildbur* analysis to determine whether MetLife's legally incorrect interpretation was an abuse of discretion. This inquiry typically involves three factors: "(1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith." *Gosselink v. Am. Tel. & Tel., Inc.*, 272 F.3d 722, 726 (5th Cir. 2001) (citing *Wildbur*, 974 F.2d at 637–38). Here, however, construing the Summary Plan Description in Thomason's favor also resolves the abuse of discretion question.

MetLife argues that it reached the legally correct interpretation and that alternatively Thomason has not shown that it abused its discretion. MetLife

---

[7] MetLife makes much of Thomason being represented by the same attorney who represented the plaintiff in *Phillips*, but this is irrelevant. Indeed, Thomason first appealed MetLife's offset of his benefits in 2011, and *Phillips* was not decided until 2013.

offers no arguments, however, that would allow it to prevail with a legally incorrect interpretation. MetLife's arguments all either ignore the effect of a misinterpretation of the "elect to receive" phrase in the Summary Plan Description or assume MetLife's interpretation is correct.[8] *See United States v. Scroggins*, 599 F.3d 433, 446–48 (5th Cir. 2010) (emphasizing the importance of not merely raising or mentioning, but of pressing, arguments).

Thomason, however, goes through each factor in part two of the *Wildbur* analysis to show that MetLife abused its discretion. First, he argues that the "internal consistency" factor does not apply when a summary plan description is at issue (citing *Rhorer*, 181 F.3d at 643), and alternatively that MetLife's legally incorrect interpretation lacked internal consistency because it reads "receive" incorrectly—both as interpreted under *contra proferentem* and as indicated by the surrounding text. Second, Thomason argues that the relevant regulations favor his position. He cites regulations requiring: (a) that a plan make clear which circumstances would result in the loss or forfeiture of his benefits, 29 C.F.R. § 2520.102–3(l); and (b) that the Summary Plan Description not be misleading, 29 C.F.R. § 2520.102–2(b). Further, he points to IRS regulations that link tax penalties with income received only if the income is distributed from the IRA without being rolled over (e.g. IRS Publication 575). Third, Thomason argues extensively that MetLife and VEBC acted in bad faith by (a) feigning ignorance of the Internal Revenue Code (in arguing that the tax rules relating to rollovers were inapplicable); and (b) failing to provide him the pension plan document and trust agreement until after Thomason filed suit. We agree with the district court that the relevant regulations favor Thomason

---

[8] MetLife's only other argument is that it did not fail to provide in good faith the documents Thomason requested from Verizon, because MetLife was neither asked nor required to provide those documents. Verizon (as VEBC), however, is also a party in the litigation. MetLife and VEBC do not explain why Verizon failed to provide the requested documentation or why such failure was not evidence of bad faith.

and, on balance, that Thomason has raised an inference of bad faith. Therefore, the district court did not err in determining that MetLife abused its discretion in offsetting Thomason's monthly benefits.

AFFIRMED.