# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-11058

United States Court of Appeals
Fifth Circuit

**FILED**
November 28, 2018

Lyle W. Cayce
Clerk

JAYSON CRAWFORD,

      Plaintiff-Appellant,

v.

METROPOLITAN LIFE INSURANCE COMPANY,

      Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:16-CV-2402

Before DAVIS, COSTA, and OLDHAM, Circuit Judges.

PER CURIAM:*

Jayson Crawford claims that MetLife violated the Employee Retirement Income Security Act (ERISA) by denying him the benefits of his wife's life insurance policy after her death. MetLife maintains that the only beneficiary Tracy Crawford ever designated was her great-nephew. The district court granted summary judgment to MetLife. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-11058

## I.

Tracy Crawford worked as a flight attendant for Southwest Airlines. That entitled her to participate in a life insurance benefit plan that Southwest sponsored for its employees. Tracy enrolled in the plan, and on April 25, 2008, she submitted a paper document naming her great-nephew as the primary beneficiary.

In 2011, Tracy married Jayson Crawford. Only three years later she died. By that time, her life insurance policy was worth $431,000. Believing his wife had named him as the beneficiary under the life insurance plan after they married, Jayson notified MetLife of Tracy's death and asked for the policy proceeds.

MetLife, however, had no record of Tracy ever designating Jayson as the plan beneficiary. The only record it had on file was Tracy's 2008 designation of her great-nephew. MetLife told Jayson as much in a letter and denied his claim. It decided to pay the plan proceeds to Tracy's great-nephew instead.

After several rounds of fruitless administrative appeals, Jayson sued under ERISA "to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). MetLife moved for summary judgment under Civil Rule 56(a), arguing that no material fact dispute existed because the plan language established that Jayson was not entitled to the benefits. Jayson, for his part, moved to extend the discovery deadline under Civil Rule 16(b)(4) and to continue the defendant's summary judgment motion under Civil Rule 56(d). He insisted that MetLife's barebones discovery responses prevented him from effectively opposing the summary judgment motion.

After a hearing on the motion to continue, the district court denied Jayson's request because the information he sought was outside the scope of permissible discovery under ERISA. Later it granted summary judgment to MetLife, and entered final judgment dismissing the suit. Jayson appealed.

No. 17-11058

II.

Jayson brings two challenges.  He argues the district court improperly denied his motion for a continuance during discovery.  *See* FED. R. CIV. P. 56(d).  He also argues the district court improperly granted summary judgment to MetLife on his ERISA claim by ignoring the firepower that he was able to muster with limited discovery.  *See* FED. R. CIV. P. 56(a).  We review the former challenge through deferential abuse-of-discretion lenses, but the latter one anew (*de novo*).  *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016).  For the sake of simplicity, we decide them in reverse order.  *See id.* at 423.

A.

ERISA allows a beneficiary to bring a civil action "to enforce his rights under the terms of [a] plan" covered by the statute.  29 U.S.C. § 1132(a)(1)(B); *see id.* § 1003(a).  Where a plan vests its administrator with discretion to interpret the plan's terms (most plans these days), we review the administrator's decision to deny benefits for an abuse of discretion.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  To do that, we apply a mindbendingly complicated two-part test, with each part itself comprised of three factors:  (1) Did the plan administrator interpret the plan correctly?  (2) If not, did the plan administrator abuse his discretion by reaching the wrong result?  *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637 (5th Cir. 1992).  An ERISA plaintiff must clear both hurdles.

Answering the first question requires us to ask whether:  (i) the administrator "has given the plan a uniform construction," (ii) that interpretation "is consistent with a fair reading of the plan," and (iii) differing interpretations will impose "any unanticipated costs."  *Id.* at 637–38.  Answering the second requires us to consider:  (i) the plan's "internal consistency" under the administrator's interpretation, (ii) any relevant administrative rules and regulations, and (iii) the facts surrounding the

3

administrator's denial of the claim, including any evidence of bad faith. *Id.* at 638. (All of this complexity, by the way, is apparently designed to ensure that we don't "undermine ERISA's goal of resolving claims efficiently and inexpensively." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011).)

Both Jayson and MetLife argue there's yet another layer of complexity. Step 1, they say, changes if we are interpreting a "summary plan description" rather than the underlying plan itself. In that case, we don't care what the correct interpretation of the plan is or whether the plan administrator landed on it. Because ERISA requires a plan summary to be "written in a manner calculated to be understood by the average plan participant," 29 U.S.C. § 1022(a), we ask only if the summary is ambiguous, *Thomason v. Metro. Life Ins. Co.*, 703 F. App'x 247, 250–51 (5th Cir. 2017). If it is, then we construe it against the drafter (*contra proferentem*), and the plaintiff clears the first hurdle. *Id.*

At one time, that may have accurately described our caselaw. *See, e.g.*, *Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 639–42 & n.7 (5th Cir. 1999). It no longer does. The Supreme Court has made clear that § 1132(a)(1)(B) focuses on "rights under the terms of the plan" and that a plan summary is not "the plan itself." *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011). Thus, as we recently made clear, a beneficiary may not assert a claim based on a summary plan description under § 1132(a)(1)(B). *Manuel v. Turner Indus. Grp., L.L.C.*, 905 F.3d 859, 865–66 (5th Cir. 2018).[1]

---

[1] We have opined, however, that "claims for injuries relating to [summary plan description] deficiencies are cognizable under [§ 1132(a)(3)]." *Manuel*, 905 F.3d at 865–66. Maybe. But allowing beneficiaries to simply reroute their plan summary claims through this neighboring catch-all provision creates the self-same risk the Supreme Court sought to avoid in *CIGNA*: Imposing plan summary liability under § 1132(a)(3) is just as likely to "lead plan administrators to sacrifice simplicity and comprehensibility in order to describe plan terms

No. 17-11058

We may consult summary plan descriptions as part of deciding what a plan means when that plan is ambiguous. *See Koehler v. Aetna Health, Inc.*, 683 F.3d 182, 189 (5th Cir. 2012). But because the Supreme Court has cautioned us against "mak[ing] the language of a plan summary legally binding," *CIGNA*, 563 U.S. at 437, we have no justification for retaining any modification to our two-part test that makes it easier for a beneficiary to establish liability under § 1132(a)(1)(B) simply by pointing to a summary plan description rather than the plan. Keying § 1132(a)(1)(B)'s liability standard to whether the plan or the plan summary is under the microscope impermissibly trains our analysis on something other than "the terms of the plan itself." *Id.* at 436.

Accordingly, because Tracy's life insurance plan gave the administrator discretion to interpret the plan, we apply our traditional multi-factor abuse-of-discretion test. Under that standard, Jayson cannot establish a material fact dispute because MetLife's interpretation is not only a "fair reading" of the plan, but also the only permissible one. *See Ramirez v. United of Omaha Life Ins. Co.*, 872 F.3d 721, 727 (5th Cir. 2017) ("Whether an insurance contract is ambiguous is a question of law . . . .").

After MetLife took over administration of the plan in 2013, it circulated a summary plan description[2] including the following provision:

---

in the language of lawyers." 563 U.S. at 437. In any case, Jayson never sued under § 1132(a)(3) here.

[2] At the outset, we note the parties have briefed the terms of the summary plan description, rather than the plan itself. But the plan makes the plan summary part of the plan here. The plan's definitional provisions state that:

> "Life and AD&D Plan" shall mean each plan designated as a "Life Accidental Death and Dismemberment Plan" on Appendix A, . . . as set forth in this plan document, *the applicable summary plan description* and/or one or more insurance contracts, as amended from time to time, *the terms of which are incorporated herein by reference.*

ROA.213-214 (emphases added). Although we discuss the summary plan description, we are ultimately interpreting the plan.

No. 17-11058

**Beneficiary Designation:** Life Insurance Beneficiary Designation must be completed through the MetLife web site at www.metlife.com/mybenefits. Effective June 15, 2013, paper life insurance designation forms will not be accepted by the Health & Wellness Team except for Committed Partner designations as described immediately below.

ROA.1023. If a participant failed to designate a beneficiary, the plan provided default rules for disbursing the plan proceeds:

BENEFICIARIES: When You Enroll in the Life and AD&D Insurance Program, You must name a beneficiary who will receive Your benefit if You die. . . . If You do not name a beneficiary for the . . . Program or if no beneficiary survives You, then the Insurance Carrier will pay in order to (i) Your surviving Spouse . . . , (ii) Your surviving children in equal amounts, (iii) Your surviving parents in equal amounts, (iv) Your surviving brothers or sisters in equal amounts, or, finally, (v) Your estate.

ROA.1030.

A single phrase in the first provision resolves this case: "will not be accepted." A person can "accept" only something that he does not (yet) have. *See* WEBSTER'S NEW INTERNATIONAL DICTIONARY 14 (2d ed. 1941) ("To receive (a thing offered to or thrust upon one) with a consenting mind"); OXFORD ENGLISH DICTIONARY 70 (2d ed. 1989) ("To take or receive (a thing offered) willingly"). So, the provision is forward-looking. MetLife would *no longer* accept paper forms like it had in the past; after June 15, 2013, all designations would need to be submitted online. But MetLife had no need to "accept" Tracy's 2008 paper designation form. The provider already had it. It is therefore unambiguous that MetLife would continue to honor a prior designation, even if a participant had submitted it in paper. Thus, Tracy "*d*[*id*] name a beneficiary" who survived her, and the provision kicking benefits to Jayson as the "surviving Spouse" never sprang into action.

6

No. 17-11058

Jayson's first response is to point to what isn't there. He notes that MetLife never told plan participants that their prior beneficiary designations would remain valid and so, the theory goes, Tracy assumed the opposite and chose not to designate Jayson because she believed the benefits would default to him anyways. But as just shown, nothing in the summary plan description suggests that prior designations vanished into thin air. MetLife's failure to warn against an inference that is nowhere contemplated in the summary cannot create ambiguity where there is none. *See, e.g.*, *Killian v. Concert Health Plan*, 742 F.3d 651, 700–01 (7th Cir. 2013) (en banc) (Manion, J., concurring in part and dissenting in part); *Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1238 (10th Cir. 2012); *Kress v. Food Emp'rs Labor Relations Ass'n*, 391 F.3d 563, 568 (4th Cir. 2004); *Sunbeam-Oster Co., Inc. Grp. Benefits Plan for Salaried & Non-Bargaining Hourly Emps. v. Whitehurst*, 102 F.3d 1368, 1376 (5th Cir. 1996).

Jayson's second response fares no better. He points to the summary's definitional provisions to argue that Tracy never named a beneficiary under *the plan administered by MetLife*. After all, he says, "Life Insurance" means "Life insurance under the Group Policy," ROA.949; "Group Policy" means "the group Life Insurance policy issued by the Insurance Carrier to the policyholder and identified by the Group Policy number," ROA.947; "Insurance Carrier" means "Any insurance carrier that funds and administers claims under the Plan," ROA.948; and MetLife is listed as the insurance carrier that "insure[s] and administer[s] . . . [the] Life Insurance and AD&D Progam," ROA.917. Thus, in Jayson's view, there are two plans and Tracy named a beneficiary only under the first one. But the text forecloses this reading. The plan's insurance carrier can be "[a]*ny* insurance carrier," a different one yesterday, today, and tomorrow. ROA.948 (emphasis added). Plus, Jayson's reading would have sweeping consequences. Benefit plans change carriers all the time, while

7

remaining the same plan, but Jayson's approach would require each participant to reup her elections every time a new insurer takes over.

Jayson falters at step 1 because MetLife interpreted the plan (as further defined in the incorporated plan summary) correctly. *See Briscoe v. Metro. Life Ins. Co.*, 671 F. App'x 355, 356 (5th Cir. 2016) (per curiam) (noting whether administrator's interpretation is a "fair reading" of the plan is the "most important factor"). We need not—and do not—reach step 2.

B.

Finally, Jayson argues that he could have mounted a better opposition to MetLife's summary judgment motion if he had more time to obtain additional discovery from MetLife. We disagree.

Motions under Civil Rule 56(d) "are broadly favored." *Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (quotation omitted). But a movant must still "set forth a plausible basis for believing that specified facts" exist and show how those facts "will influence the outcome of the pending summary judgment motion." *Id.* The answer to that question hinges on the scope of relevant documents, which hinges on the nature of the plaintiff's challenge. Generally, a district court "may not consider evidence that [was] not part of the administrative record" when reviewing a plan administrator's coverage determination. *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299–300 (5th Cir. 1999) (en banc). But we have recognized exceptions to the general rule, for instance, where a plaintiff challenges "how the administrator has interpreted the plan in the past" or "question[s] the completeness of the administrative record" itself. *Crosby*, 647 F.3d at 263. The parties dispute the precise nature of Jayson's challenge.

We don't need to get into that quagmire here because there's a simpler way to resolve this issue. "In evaluating district courts' rulings on Rule 56(d) motions, we generally assess[] whether the evidence requested would affect

No. 17-11058

the outcome of a summary judgment motion." *Smith*, 827 F.3d at 423. Our discussion of the district court's summary judgment decision tells the whole story. The plan's text is clear, and none of the documents Jayson claims he is entitled to can change that.

\* \* \*

For the foregoing reasons, the district court's decision denying Jayson's motion to continue and granting MetLife's motion for summary judgment is AFFIRMED.